STATE of Missouri, Respondent,

v.

Joseph W. LEADY, Appellant.

Joseph W. LEADY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 46104, WD 48439.

Missouri Court of Appeals,
Western District.

May 17, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Application to Transfer Denied
Aug. 15, 1994.

---

**646**

Rosalynn Koch, Office of the State Public Defender, Columbia City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and KENNEDY and SPINDEN, JJ.

SPINDEN, Judge.

Joseph W. Leady appeals his kidnapping conviction following a jury trial and the court's denial of his Rule 29.15 motion for post-conviction relief. He contends four trial errors: (1) the state did not make a submissible case; (2) the trial court erred by admitting evidence of uncharged misconduct; (3) the trial court erroneously admitted a handgun found in Leady's apartment but not used in the kidnapping; and (4) the trial court erroneously overruled his motion to dismiss on the ground that the state violated the uniform disposition of detainers law. Concerning the court's denial of his Rule 29.15 motion, he contends that the decision was erroneous because he suffered ineffective assistance of counsel. We affirm the judgments of the trial court and the motion court.

## I.

In his first point, Leady contends that the trial court erred by overruling his motion for judgment of acquittal because the state did not make a submissible case of kidnapping. He argues that the state did not establish that he confined the victim for the purpose of obtaining her sexual performance. We disagree.

Through the testimony of the 12–year–old victim, the state established that on June 11, 1990, Leady stopped his truck on a Fulton street and asked the victim for directions to an establishment called Rojo's.[1] The victim gave him directions, but he claimed that he could not understand them. He asked her to get into his truck to direct him there. She did. Inside the truck, she told Leady that she was 12 years of age. After they arrived at Rojo's, Leady did not stop. He drove on to a market where the victim had originally been headed. While Leady waited in his truck, the victim went into the store and bought some items for her sister. Leady then drove her back home.

The victim further testified that Leady told her that he was thinking about buying a house in Millersburg, and he asked her to go look at it with him. She agreed. On the way to Millersburg, he stopped the truck at a

---

1. A witness testified that Leady had been at    Rojo's earlier in the day.

liquor store. The victim waited in the truck while Leady went inside and bought beer. He gave a can of beer to the victim and opened one for himself. He then drove to a nearby house with a "for sale" sign in the front yard. He drove the truck down the long driveway and parked it near a barn. They sat together in the truck for a while looking at the house. She asked him to take her home, but he refused.

She told the court that Leady said that he could not take her home because he wanted to "fool around" and that he knew she did, too, because she had made the trip with him. She told him that she was not interested and asked him again to take her home. He told her that he could not do that, so she got out of the truck and began running down the driveway. He yelled to her that he had a gun and would kill her if she did not return to the truck. She asked him if he would take her home if she went back. He said that he would. After she got back in the truck, she kept her hand on the door handle as the two talked. She "played" with the handle and tried to open the door once, but the door was locked. She asked Leady again to take her home. He grabbed her neck, pushed her head down, and told her that he would kill her if she broke the handle.

She testified that Leady then drove the truck closer to the barn and got out. He walked around to her side of the truck, opened his jeans, exposed his penis, and began masturbating. He told her to lift her shirt so he could "come" faster. She refused. After he ejaculated, he got back into the truck and ordered her to get out. She jumped out and began running down the driveway. Leady drove the truck past her and turned toward Columbia. She ran to the road and turned back toward Fulton. She ran to the liquor store where she was able to telephone for help.

This was sufficient evidence to convict Leady of kidnapping. Section 565.110.1 [2] provides, "A person commits the crime of kidnapping if he ... unlawfully confines another without his consent for a substantial

period, for the purpose of ... (4) [f]acilitating the commission of any felony[.]" The state charged that Leady confined his victim for the purpose of using her in a sexual performance, a Class C felony. As set out in § 568.080.1, "A person commits the crime of use of a child in a sexual performance if, knowing the character and content thereof, the person ... induces a child less than seventeen years of age to engage in a sexual performance[.]" Section 556.061(31), RSMo Cum.Supp.1993, defines "sexual performance" as "any performance, or part thereof, which includes sexual conduct by a child who is less than seventeen years of age[.]" Section 556.061(29), RSMo Cum.Supp.1993, defines "sexual conduct" as "acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification[.]"

■ Leady argues that he "never asked the victim to engage in any type of 'sexual performance,' i.e., one involving sexual conduct by the victim." This misses the point that the jury had sufficient evidence from which to conclude that this was the *purpose* for the incident. Leady does not dispute that he confined the victim. The sexual nature of the episode, beginning as it did with his expressed hope that she would want to "fool around" and ending with his request that she expose herself to aid his masturbating made his purpose clear. Section 565.-110.1 does not require that the perpetrator successfully complete a felony—only that his purpose for the confinement be the commission of a felony. The jury had sufficient evidence from which to make the reasonable inference that Leady's original purpose was to obtain the victim's sexual performance.

## II.

■ Leady's second contention of error is that the trial court permitted evidence that an unidentified man [3] approached an eight-

---

2. All statutory references are to the 1986 Missouri Revised Statutes.

3. The witness said that she could not identify anyone in the courtroom as the man who ap-

or nine-year-old girl riding her bicycle in the same neighborhood on June 11, 1990, and asked for directions to Rojo's. Leady did not preserve the issue for appeal, but he asks us to review it as plain error pursuant to Rule 30.20(b). The error, he says, was that the evidence was not probative of any issue and concerned uncharged misconduct which violated his constitutional rights and unduly prejudiced the jury. We disagree.

The girl testified that she was riding her bicycle in a funeral home parking lot near her apartment in the early afternoon of June 11 when a man drove up in a new, little red truck and asked her if she knew where Rojo's was. She said that she did not and suggested that he ask someone at the funeral home. The girl tried to leave the parking lot, but he blocked the exit with his truck. The man asked her where she lived. She pointed to her apartment. The man drove away, and the girl went to her apartment. A couple of minutes later, she returned to the parking lot, and the man drove his truck through the parking lot again without stopping. She saw him again a few minutes later circling a block in the neighborhood in the truck.

The state asked her, "Can you tell us here a year and a half later if you see that person in the courtroom?" She answered, "No." Asked to describe the man, she gave a description which matched that given by the victim. She said, "He had [a diamond] earring in his [right] ear[.] He had light curly hair [about shoulder length]. He had spacey eyes and it looked like he had acne." The state also called the girl's mother who confirmed the girl's testimony.

■ We fail to discern evident, obvious and notorious error in admitting this testimony, as we must do to accord plain error review pursuant to Rule 30.20(b). *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992). Leady complains:

[T]his evidence was absolutely irrelevant to any issue in this case and it was highly prejudicial to [Leady] in that it increased the likelihood that the jury, though they might not believe the victims' account of the occurrences on June 11, 1990, would

nevertheless convict [Leady] because they believed he had tried to pick up a 10–year–old girl and therefore constituted a danger to the community.

We need look no further than Leady's brief to conclude that the evidence was relevant and probative. Leady acknowledges:

It was [Leady's] basic strategy to convince the jury that [the victim] appeared to be older than she really was, and also to capitalize on the fact that she acquiesced in driving with [him] to Millersburg.... Evidence showing [Leady] to have just previously accosted [an eight-year-old] girl destroyed any possibility that this strategy could be effective. [The eight-year-old girl's] testimony caused the jury to discredit any possibility that [Leady] acted in an honest belief that the victim was not 12 years old and ceased his requests for sexual activity upon discovering her true age.

We fail to discern plain error in the trial courts admitting it.

■ As for prejudice, the trial court is in the best position to determine whether the prejudicial effect of evidence outweighs its relevance. We defer to its judgment. *State v. Ellis*, 853 S.W.2d 440, 445 (Mo.App.1993). We do not discern an abuse of discretion by the trial court in concluding that the evidence's probative value outweighed its prejudicial effect.

### III.

■ In his third point, Leady contends that the court erred in overruling his Rule 29.15 motion for post-conviction relief because he established that his trial attorney was ineffective by failing to preserve for appeal the issue raised in Point II. As relevant and probative evidence, Leadys attorney had little reason to object to the testimony that a man matching Leady's description approached an eight- or nine-year-old girl in the same neighborhood and asked for directions to Rojo's. Counsel cannot be deemed ineffective for failing to raise non-meritorious objections. *State v. Westcott*, 857 S.W.2d 393, 397 (Mo.App.1993). Moreover, failure to object to everything objec-

proached her, nor could she identify him from a    photograph shown to her previously by police.

tionable does not demonstrate incompetence. *Bailey,* 839 S.W.2d at 663. "[A]ny experienced trial lawyer knows ... that it is not always wise to make all possible objections." *Jones v. State,* 784 S.W.2d 789, 792 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). We judge such contentions as Leady makes here by searching for evidence demonstrating overall incompetence so as to not permit him to convert unpreserved error into viable error by asserting it in a Rule 29.15 motion. *Id.* at 793. We find no indication of overall incompetence. Leady's attorney was not unfamiliar with the grounds for objection and did not lack alertness.

## IV.

■ Next, Leady contends that the trial court committed plain error by admitting into evidence a handgun found in a police search of Leady's apartment. Officers found the gun in a dresser drawer where Leady's wife stored her belongings. Leady argues that admitting the gun was plain error "because it allowed the jury to infer from its admission and demonstration the truth of all that was predicated on it when, in fact, it had nothing to do with the defendant or the crime."

■ We grant plain error review only when the error "so substantially affects the right of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Burgess,* 800 S.W.2d 743, 746 (Mo. banc 1990) (quoting *State v. Valentine,* 646 S.W.2d 729, 731 (Mo. 1983)). "Relief under plain error ... requires that appellant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Even if the admission of the gun were plain error, we do not discern manifest injustice or a miscarriage of justice in this case. "The strength of the state's case is a *prime factor* in the determination of whether the trial court's error, if any, resulted in manifest injustice or a miscarriage of justice." *State v. Cook,* 753 S.W.2d 28, 30 (Mo.App.1988) (emphasis in original). The state's case against Leady was strong. The admission of the gun did not prejudice Leady to the extent that the result of the case would have been any different. Hence, we find no manifest injustice or miscarriage of justice.

## V.

■ In his fifth point, Leady contends that the court erred in overruling his Rule 29.15 motion for post-conviction relief because he established that his trial attorney was ineffective by failing to object to the admission of the gun into evidence. To establish ineffective assistance of counsel, Leady must show that his attorney did not exercise the customary skill and diligence a reasonably competent attorney would have exercised and that this prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[T]his Court's finding of no manifest injustice on direct appeal serve[s] to establish a finding of no prejudice under the *Strickland* test." *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc), *cert. denied,* 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990); *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Leady's contention is without merit.

## VI.

In his final point, Leady argues that the trial court erred in overruling his motion to dismiss because the state failed to comply with the Uniform Mandatory Disposition of Detainers Law, § 217.450.2, RSMo Cum. Supp.1993. He asserts that he was incarcerated for more than one year between the filing of the charges against him and the date of his trial without being officially informed in writing of the source and nature of the complaint against him.

■ Section 217.450 provides prisoners with the means in which to request the final disposition of pending indictments, informations and complaints. That section provides:

1. Any person confined in a department correctional facility may request a final disposition of any untried indictment,

information or complaint pending in this state against him while so imprisoned....

2. The director shall promptly inform each offender in writing of the source and nature of any untried indictment, information or complaint against him of which the director has knowledge, and of his right to make a request for final disposition of such indictment, information or complaint.

3. Failure of the director to inform an offender, as required by this section, within one year after a detainer has been filed at the facility shall entitle him to a final dismissal of the indictment, information or complaint with prejudice.

We are to construe the Uniform Mandatory Disposition of Detainers Law in harmony with the Interstate Agreement on Detainers, § 217.490, et seq., RSMo 1986. *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353 (Mo. banc 1982).

■ The state acknowledges that Leady never received notice of the information filed against him in writing from the director of the Department of Corrections. The state contends, however, that Leady already had knowledge of the information as evidenced by his pleading not guilty to all counts before the Circuit Court of Callaway County four days after the information was filed. Section 217.450 requires, however, notice in writing by the division director. Because the division director did not inform Leady in writing about the information, Leady would be entitled to a final dismissal of the information with prejudice if a detainer had been filed against Leady at the facility. However, no detainer was filed; hence, Leady is not entitled to a dismissal of the information.

We affirm the judgments of the trial court and motion court.

All concur.