STATE of Missouri, Respondent,

v.

Damon A. THOMAS, Appellant.

No. WD 54180.

Missouri Court of Appeals,
Western District.

March 31, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Bruce W. Simon, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and HOWARD, JJ.

ULRICH, Chief Judge, Presiding Judge.

Damon Thomas appeals from his convictions following jury trial for assault in the first degree, section 565.050, RSMo 1994, and armed criminal action, section 571.015, RSMo 1994, and consecutive terms of life imprisonment on the first degree assault conviction and fifty years imprisonment on the armed criminal action conviction. Mr. Thomas raises three points of trial court error. He argues the trial court erred by: (1) denying his motion to dismiss where the state failed to comply with the requirements of the Uniform Mandatory Disposition of Detainers Law, Section 217.450, RSMo 1994; (2) denying his motion for acquittal where the information failed to charge the requisite mental state of first degree assault; and (3) admitting Officer David Kling's testimony regarding the display of the photo line-up to the witnesses. The judgment of convictions is affirmed.

## FACTS

Michelle Lee, Nikita Pope, Danielle Duhart and Lindara Galbreth went to the Seven–Eleven Party Center in Jefferson City, Missouri, on August 17, 1993 at 9:30 p.m. to purchase beverages. While inside the store, Damon Thomas began talking to the four women. Mr. Thomas bought Ms. Duhart a soda and gave her a piece of paper with his pager number on it. Mr. Thomas left the store with the four women and went outside to talk with Terry Covington and a man named Clarence. The four women saw Mr. Covington and Clarence leave in a white Tempo with Kansas plates. They also noticed Mr. Thomas walking to the side of the building.

When the four women reached their car, they began to talk to two men parked next to them, Ryan Randolph and Donald Easley. Ms. Duhart and Ms. Pope stood up with the driver's side door open while Ms. Lee and Ms. Galbreth sat in the car. While the four women talked to Mr. Randolph and Mr. Easley, they heard gunshots. Mr. Easley and

Ms. Pope looked up and saw Mr. Thomas holding a gun and firing in their general direction. Ms. Duhart did not see who shot the gun but noticed that the sound of shots being fired was coming from the area in which she last saw Mr. Thomas. At least six shots were fired. One of the bullets struck Ms. Lee in her neck, leaving her paralyzed from the neck down.

When the police arrived, Ms. Duhart and Ms. Pope gave them a description of the white car that Mr. Covington and Clarence were in and gave them Mr. Thomas's pager number. Later, the police spotted a white Tempo with Kansas plates and a pursuit ensued. Eventually the car stopped, and three men ran from the car. None of the men were apprehended that evening. Inside the car, the police found a cleaning receipt and audio tape with Mr. Thomas's name on them.

At trial, Officer David Kling testified regarding the photo spread he had shown to the witnesses. Over Mr. Thomas's objection, the photo spread that Officer Kling had shown to the witnesses was introduced into evidence. At the close of the evidence, the jury found Mr. Thomas guilty of first degree assault and armed criminal action. The trial court sentenced him as a prior offender to consecutive terms of life imprisonment on the first degree assault conviction and fifty years on the armed criminal action conviction. This appeal followed.

## I. THE STATE COMPLIED WITH THE REQUIREMENTS OF THE UNIFORM MANDATORY DISPOSITION OF DETAINERS LAW

As his first point on appeal, Mr. Thomas argues the trial court erred by failing to sustain his motion to dismiss due to the state's alleged failure to comply with the Uniform Mandatory Disposition of Detainers Law. Mr. Thomas specifically argues that the mandate of the Uniform Mandatory Disposition of Detainers Law was not met because he was not informed within one year of his incarceration in Kansas that the indictment[1]

was pending against him in Missouri as required by section 217.450, RSMo 1994.

The Uniform Mandatory Disposition of Detainers Law is set forth at sections 217.450 to 217.485, RSMo 1994. **§ 217.450–217.485, RSMo 1994.** Section 217.450, RSMo 1994, provides:

1. A person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state on the basis of which a detainer has been lodged against him while so imprisoned. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

2. The director shall promptly inform each offender in writing of the source and nature of any untried indictment, information or complaint for which a detainer has been lodged against him of which the director has knowledge, and of his right to make a request for final disposition of such indictment, information or compliant on which the detainer is based.

3. Failure of the director to inform an offender, as required by this section, within one year after a detainer has been filed at the facility shall entitle him to a final dismissal of the indictment, information or complaint with prejudice.

§ 217.450, RSMo 1994. The one year notice requirement in section 217.450.3 does not begin to run until after a detainer has been filed at a correctional facility. *State v. Leady*, 879 S.W.2d 644 (Mo.App.1994) (citing § 217.450.3, RSMo 1994).

In *Leady*, the defendant contended the mandates of section 217.450 were not complied with because he was incarcerated for more than one year between the filing of the charges against him and the date of his trial without being officially informed in writing of the source and nature of the complaint against him. *Id.* at 649. The court noted

---

1. The state ultimately proceeded to trial on a second substitute information in lieu of indictment.

that under section 217.450, the defendant would have been entitled to a final dismissal of the information with prejudice if a detainer had been filed against the defendant at the facility. *Id.* at 650. However, because no detainer was filed, the one year requirement was not invoked and, hence, the defendant was not entitled to a dismissal of the information. *Id.*

■ Mr. Thomas is not entitled to a dismissal of the information. As the court noted in *Leady,* the one year statutory notice requirement did not begin to run until a detainer had been filed against Mr. Thomas at the Kansas correctional facility. The state caused a letter to be sent to the Ellsworth Correctional Center in Ellsworth, Kansas, on February 15, 1996, asking that a detainer be placed on Mr. Thomas. As established in *Leady,* the filing of the detainer triggered the one year notice requirement of section 217.450. Mr. Thomas, therefore, would have been entitled to a final dismissal of the information with prejudice if he had not received notice of the detainer within one year from the date the detainer was filed with the Kansas correctional facility. Mr. Thomas, however, received notice of the detainer on March 4, 1996, within the one year limit imposed by section 217.450. While Mr. Thomas alleges he was incarcerated in Kansas for more than one year before he received notice of the charges pending against him in Missouri, as established in *Leady,* that is irrelevant to whether the notice requirement of section 217.450.3 was satisfied. Because the state sent Mr. Thomas notice of the detainer within one year of the date the detainer was filed with the Kansas correctional facility in which Mr. Thomas was incarcerated, the one year notice requirement of section 217.450 was met and, hence, Mr. Thomas was not entitled to a dismissal of the indictment. Point one is denied.

## II. THE INFORMATION WAS SUFFICIENT TO CHARGE MR. THOMAS WITH FIRST DEGREE ASSAULT

As his second point on appeal, Mr. Thomas argues that the trial court erred by failing to sustain his motion for judgment of acquittal at the close of the state's evidence and at the close of all the evidence. The essence of Mr. Thomas's complaint is that the second substitute information fails to allege that he committed a section 565.050 violation because the information did not allege that Mr. Thomas "knowingly" attempted to kill or cause physical injury to Mr. Randolph, Mr. Easley and Ms. Lee.

■ Section 565.050 provides:

1. A person commits the crime of assault in the first degree if he attempts to kill *or* knowingly causes *or* attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

§ 565.050, RSMo 1994 (emphasis added). The language used in section 565.050 is in the disjunctive, indicating that a person commits the crime of first degree assault if he either (1) attempts to kill; (2) knowingly causes serious physical injury to another person; or (3) attempts to cause serious physical injury to another person. § 565.050, RSMo. The charging document is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charge, and enables the defendant to plead double jeopardy as a bar to future prosecution for the same offense. *State v. Boyd,* 927 S.W.2d 385, 389–90 (Mo.App.1996).

■ The second substitute information was sufficient to charge Mr. Thomas with a section 565.050 violation. Because section 565.050 uses the disjunctive "or", the information needed only allege that Mr. Thomas *either* (1) attempted to kill; (2) knowingly caused serious physical injury to another person; *or* (3) attempted to cause serious physical injury to another person. The second substitute information stated that Mr. Thomas committed first degree assault under subsections (1) and (3) in that he "attempted to kill or cause serious physical injury to Ryan Randolph and Donald Easley by shooting at them with a gun and in the course thereof inflicted serious physical injury on Michelle Lee by shooting her with a gun." Contrary to Mr. Thomas's allegations, the State was not required to allege that he

"knowingly" attempted to kill or cause serious physical injury. Each of the three subsections includes the requirement that the person charged must have acted wilfully and knowingly. The necessity to allege the culpable mental state, that the defendant acted knowingly and wilfully, is included within the statutory words defining each of the three ways for committing the offense. Thus, to allege that Mr. Thomas attempted to kill or that he attempted to cause serious physical injury asserts that his conduct was wilful and knowing. *See Arellano v. State*, 779 S.W.2d 631, 632 (Mo.App.1989) (finding information correctly charged section 565.050 violation where it alleged that defendant "attempted to kill or cause serious physical injury to [victim] by shooting at him"). Because the State was not required to allege that Mr. Thomas "knowingly" attempted to kill or cause serious physical injury mental state, the information sufficiently charged Mr. Thomas with a section 565.050 violation. Point two is denied.

### III. THE ADMISSION OF THE PHOTO LINE-UP WAS PROPER

As his third point on appeal, Mr. Thomas argues that the trial court erred by admitting into evidence the photo spread that Officer Kling had shown to the witnesses that contained Mr. Thomas's photograph. Mr. Thomas argues that the admission of the photo line-up constituted impermissible bolstering of the identifying witnesses' testimony under *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972), and, therefore, he is entitled to a new trial.

In *Degraffenreid*, the Missouri Supreme Court reversed the trial court's admittance of a police officer's testimony that corroborated an eyewitness's testimony regarding his identification of defendant during two lineups when the identification testimony had not been impeached. *Id.* at 64–65. The Court found that, under these circumstances, the police officer's testimony constituted inadmissible hearsay and improper bolstering. *Id.*

In *State v. Harris*, 711 S.W.2d 881 (Mo. banc 1986), however, the Missouri Supreme Court partially reversed itself. *Id.* at 881–85; *accord State v. Wade*, 926 S.W.2d 43, 45

(Mo.App.1996); *Calvin v. State*, 768 S.W.2d 155, 157 (Mo.App.1989); *Granger v. State*, 746 S.W.2d 598, 601 (Mo.App.1988). In *Harris*, the trial court admitted cumulative testimony by a police officer regarding an eyewitness's identification of the defendant during a lineup. *Harris*, 711 S.W.2d at 881. In affirming the trial court's admittance of the police officer's testimony, the Supreme Court rejected the *Degraffenreid* court's decision to "fashion[ ] a *per se* rule against third person, unimpeached testimony which described the same as inadmissible hearsay." *Id.* at 884. The Supreme Court stated that although the trial court retained the discretion to sustain objections to such testimony based on other traditional grounds, such as bolstering or cumulative evidence, such testimony was not *per se* inadmissible. *Id.*

■ Mr. Thomas's contention that the trial court committed error under *Degraffenreid* is without merit. Officer Kling testified as follows:

Q: And did you prepare a photo spread-line to show to the three eyewitnesses that were there that day?

A: Yes, sir, I did.

[OBJECTION BY DEFENSE OVERRULED BY COURT]

Q: I'm showing you what's been marked as State's exhibit No. 9. Do you recognize this?

A: Yes, sir, I do.

Q: What is this?

A: This is the photo spread that I compiled in regards to this investigation.

Q: Is this the photo spread that you showed the witnesses?

A: Yes, it is.

Q: Is the defendant's picture in that photo spread?

A: Yes.

Q: Which photo is it?

A: Photo No. 1 in the upper left corner.

A *Degraffenreid* violation could only have occurred had Officer Kling testified that the witnesses identified Mr. Thomas from the photo line-up. Officer Kling, however, never testified that the eyewitnesses identified Mr. Thomas from the photo line-up. Instead, he

testified only that State's exhibit No. 9 was the photo line-up he showed the witnesses. Because Officer Kling never testified that the witnesses identified Mr. Thomas from the photo line-up, *Degraffenreid* was not implicated. The trial court, therefore, did not err in admitting the photo line-up in evidence. Point three is denied.

The judgment of convictions is affirmed.

All concur.