Carman L. DECK, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 83237.

Supreme Court of Missouri,
En Banc.

Feb. 26, 2002.

420

Melinda K. Pendergraph, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Atty. Gen., Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

Carman L. Deck received two sentences of death for the double homicide of James and Zelma Long. His convictions and sen-

tences for these crimes, and for related convictions for armed criminal action, burglary and robbery, were affirmed on direct appeal, *State v. Deck*, 994 S.W.2d 527 (Mo. banc 1999), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). He now appeals the denial of his timely-filed Rule 29.15 motion for post-conviction relief based on ineffective assistance of counsel. Because the death penalty was imposed, this Court has jurisdiction. *Mo. Const. art. V, sec. 10*; Order of June 16, 1988.

Mr. Deck asserts numerous grounds on which he says that his motion for post-conviction relief should be granted as to the penalty phase of his trial. This Court considers his claim that his counsel was ineffective in failing to offer proper mitigation instructions during the penalty phase trial. The Court agrees that this error resulted in prejudice sufficient to entitle him to a new penalty phase trial under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court finds no merit to his claim that he was entitled to a new guilt phase trial and that the time limits for filing his Rule 29.15 motion were unconstitutionally short. Accordingly, the denial of Rule 29.15 relief is reversed as to the penalty phase of the trial, but is affirmed as to the guilt phase of the trial. The case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts Surrounding Crimes.

On July 6, 1996, Mr. Deck and his sister, Tonia Cummings, executed a scheme to rob James and Zelma Long.[1] As nightfall approached, they knocked on the Longs' door and pretended to need directions. Mr. Deck then pulled out a pistol and ordered the Longs to lie face down on their bed and to give him their valuables. They fully complied, even helping the intruders to open the safe and writing them a personal check. As the Longs then lay on the bed, begging for their lives, Mr. Deck paced around the bedroom trying to decide what to do for about ten minutes. At that point, Ms. Cummings ran in and said time was running out. Mr. Deck put the gun to Mr. Long's temple and fired twice, and then put the gun to Mrs. Long's head and fired twice. Later that same day, the police picked up Mr. Deck based on a tip from an informant. Mr. Deck later confessed.

### B. Trial Events Concerning Submission of Penalty Phase Mitigation Issues.

After Mr. Deck was found guilty of first-degree murder in the deaths of the Longs and on related crimes, the penalty phase of the trial was held. Mr. Deck presented mitigation evidence from four witnesses regarding his horribly abusive childhood. His aunt testified that his parents separated when he was eight or nine, and he and his three younger siblings went to live with their mother. The house and the children were filthy. Carman's younger brother, Michael, testified that their mother was always off drunk at clubs or with her boyfriends, so Carman would take care of his younger siblings. Sometimes he would even have to go out and find food for them, although he had no money, because they were always hungry and their mother was never there. He would give them baths and play with them, almost like he was their parent. Finally, just before Thanksgiving of 1975, when Carman was ten and his youngest brother two and one-half, his mother abandoned him.

---

1. Further details regarding the crimes underlying Mr. Deck's convictions and regarding the guilt and penalty phase trial are set out in this Court's opinion on direct appeal, *Deck*, 994 S.W.2d 527, and will not be repeated here.

Carman and his brothers lived with his father and his father's girlfriend for awhile, but eventually his father got a new girlfriend who did not want him, and he was placed in foster care. The children were not kept together, and Carman was moved from foster home to foster home. When Carman was 13 or so, he went to live with the Pucketts. Mr. Puckett traveled 800 miles to testify at the trial. He said Carman fit in wonderfully with his family, helping to take care of Mrs. Puckett, who was not able to see, and helping with whatever was asked. Carman had a great relationship with the Puckett children. He told the Pucketts he was afraid to love anymore because if he loves it gets taken away from him. The Pucketts said love was there for him with them and that he could love them, and they tried to adopt him. But, DFS took him away and put him back with his mother, over his protest that "if you take me out of here you're killing me."

Carman's mother continued to abuse him, finally throwing him through a plate glass window. At that point, he was sent to live with other relatives, but lost contact with his siblings. When Carman was in his teens he turned to crime and ended up in prison, but later he and Michael again became close. Michael testified he still loved Carman and trusted Carman with his children.

After the parties finished presenting their evidence in the penalty phase of the trial, the court held an instruction conference. Defense counsel offered two instructions regarding non-statutory circumstances in mitigation of punishment based on MAI–CR3d 313.44A. The court refused both instructions. Defense counsel did not have alternate instructions ready, so new instructions based on MAI–CR3d 313.44A were downloaded from the court's computer and printed. Counsel failed to note that

the last two paragraphs of MAI–CR3d 313.44A apparently did not print. In any event, she offered an incomplete version of the downloaded instructions. Proposed Instruction 8 said:

As to Count I, if you unanimously find that the facts and circumstances in aggravation of punishment, taken as a whole, warrant the imposition of a sentence of death upon the defendant, you must then determine whether there are facts or circumstances in mitigation of punishment which are sufficient to outweigh the facts and circumstances in aggravation of punishment. In deciding this question, you may consider all of the evidence presented in both the guilt and the punishment stages of trial.

Proposed Instruction 13 was identical except for its numbering and its reference to Count III rather than to Count I.

The two paragraphs from MAI–CR3d 313.44A that should have been included at the end of Instructions 8 and 13, but were not, would have read:

You shall also consider any (other) facts or circumstances which you find from the evidence in mitigation of punishment.

It is not necessary that all jurors agree upon particular facts and circumstances in mitigation of punishment. If each juror determines that there are facts or circumstances in mitigation of punishment sufficient to outweigh the evidence in aggravation of punishment, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

MAI–CR3d 313.44A. Defense counsel offered no objections to the omission of these two paragraphs from Instructions 8 and 13 when the court asked for comments or objections on the record with respect to

any instruction. The trial court subsequently charged the jury with the incomplete versions of Instructions 8 and 13.

During deliberations, the jury sent the judge a note asking, "[w]hat is the legal definition of mitigating (as in mitigation circumstances)? Instruction 8." The judge responded, "Any legal terms in the instructions that have a 'legal' meaning would have been defined for you. Therefore, any terms that you have not had defined for you should be given their ordinary meaning." The jury then sent another note, asking, "Can we have a dictionary?" The judge replied, "No, I'm not permitted to give you one." Counsel for Mr. Deck neither requested that "mitigation" be defined nor objected to the trial court's responses to the jury's requests. The jury fixed punishment at death on both counts.

### C. Discovery of Missing Mitigation Language Post–Trial.

Defense counsel did not realize that the final two key paragraphs of MAI–CR3d 313.44A had been omitted until one of her experts pointed it out as she was preparing for the sentencing hearing almost a month after trial. She brought the error to the judge's attention in chambers, before sentencing. The prosecutor conceded that an error had been made, but argued defense counsel committed the error, not the court. Defense counsel accepted responsibility, urged the court not to penalize Mr. Deck for her error and argued that the only recourse was to give Mr. Deck a new penalty phase trial. The court rejected this motion, stating that counsel had an obligation to submit the instructions in proper form and had failed to show the omissions resulted in prejudice.

### D. Finding of No Plain Error on Direct Appeal.

On direct appeal, this Court rejected Mr. Deck's claim that it was plain error to omit the last two paragraphs of MAI–CR3d 313.44A from Instructions 8 and 13, stating:

> For instructional error to rise to the level of plain error, *the trial court must have so misdirected or failed to instruct the jury so that it is apparent that the instructional error affected the verdict.*

*Deck*, 994 S.W.2d at 540 (emphasis added). This definition of plain error is consistent with that in other cases. Although "prejudicial error" is a condition precedent of "plain error," "prejudicial error" does not inevitably rise to the level of "plain error." *State v. Miller*, 604 S.W.2d 702, 706 (Mo. App. W.D.1980). To show plain error, defendant must show the error so substantially affected his rights that a manifest injustice or a miscarriage of justice would result were the error left uncorrected. Rule 30.20; *State v. Winfield*, 5 S.W.3d 505, 516 (Mo. banc 1999).

*Deck* determined that the prejudicial effect of the omission of the two noted paragraphs from Instructions 8 and 13 was ameliorated by the giving of Instructions 9 and 14. Instruction 9 stated [2]:

> As to Count I, you are not compelled to fix death as the punishment even if you do not find the existence of facts and circumstances in mitigation of punishment sufficient to outweigh the facts and circumstances in aggravation of punishment. You must consider all the evidence in deciding whether to access and declare the punishment at death. Whether that is to be your final decision rests with you.

If these instructions are read together, *Deck* concluded, the jurors would realize that they did not have to be unanimous as

---

**2.** Instruction 14 was identical except that it referred to Count III.

to each mitigating factor. The instructions, therefore, did not affirmatively mislead them, and the high standard for finding plain error was not met even in the absence of the missing paragraphs. *Id.* at 541. *Deck* also rejected the contention that the court should have defined "mitigating," holding it has no special legal definition and that it was not error to deny the jury's request for a dictionary because "the jury should rely solely upon the evidence and the court's instructions." *Id.* at 542.

## II. COMPARISON OF PLAIN ERROR RELIEF STANDARD WITH POST–CONVICTION RELIEF STANDARD UNDER STRICKLAND

### A. Standard of Review.

Mr. Deck filed a motion for post-conviction relief under Rule 29.15, which was denied by the motion court. The State argues that the motion court properly rejected Mr. Deck's arguments in regard to error in the mitigation instructions based on this Court's holding on direct appeal that the failure to give the jury the two mitigation paragraphs did not amount to plain error. The State argues, "it is well-settled law that a finding of no 'plain error' on direct appeal forecloses a movant from re-litigating the same issue in a post-conviction motion under the guise of 'ineffective assistance of counsel.'" It concludes that, as a result, "[t]he finding of no manifest injustice under the 'plain error' standard on direct appeal serves to establish a finding of no prejudice under the test of ineffectiveness of counsel enunciated under *Strickland v. Washington*, [466 U.S. at 686–88, 104 S.Ct. 2052]." In support, the State relies on cases such as *Sidebottom v. State*, 781 S.W.2d 791 (Mo. banc 1989), and various intermediate appellate court decisions. Mr. Deck disputes the State's interpretation and application of these cases and argues that, to the extent they may

support the State's position, they fail to follow *Strickland* and should be overruled.

■ This Court's review of the trial court's findings of fact and conclusions of law in denying a post-conviction motion is limited to a determination of whether the findings and conclusions are clearly erroneous. *Rousan v. State*, 48 S.W.3d 576, 581 (Mo. banc 2001). Here the parties have presented an issue as to the proper legal standard to be applied in determining a post-conviction motion. This is an issue of law, which this Court determines *de novo*, without deference to the motion court. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000).

### B. Strickland Standard for Grant of Post–Conviction Relief.

■ The United States Supreme Court set out the standard for granting post-conviction relief based on allegations of ineffective assistance of counsel in *Strickland*. It held that the "benchmark" for judging whether counsel is ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. 2052. It further explained that in order to meet this standard movant must show by a preponderance of the evidence: (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) that counsel's deficient performance prejudiced the defense. *Id.* at 687–88, 104 S.Ct. 2052.

■■ A movant bears a heavy burden in establishing the first prong of the standard by a preponderance of the evidence, for the movant must overcome a strong presumption that counsel provided competent assistance. Rule 29.15(i); *Leisure v.*

*State*, 828 S.W.2d 872, 874 (Mo. banc 1992). Movant must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. To do this, movant must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the "court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." *Id.* at 690, 104 S.Ct. 2052.

In regard to the second prong of the *Strickland* test, the Court said that an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052. For this reason, a movant must claim counsel's errors resulted in prejudice by showing "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052 (emphasis added).

This standard is not met by showing that the errors "had some conceivable effect on the outcome of the proceeding" or that the errors " 'impaired the presentation of the defense,' " as those standards are either unworkable or subject to being satisfied by every error. *Id.* at 693, 104 S.Ct. 2052. On the other hand, the Supreme Court specifically rejected the argument that a movant must meet an "outcome-determinative" test by showing that it is more likely than not that counsel's deficient conduct altered the outcome of the case, because "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

## C. Missouri Courts' Application of *Strickland*.

While Missouri courts since *Strickland* have uniformly recognized the *Strickland* standard for ineffectiveness and prejudice, some cases have overlooked *Strickland*'s careful admonition that a movant need not prove that an error was outcome-determinative in order to be entitled to post-conviction relief.

The origin of this erroneous application of *Strickland* appears to be in the misinterpretation of *Sidebottom*. *Sidebottom* involved the effect of defense counsel's failure to object to an exhibit that made reference to an uncharged rape and burglary. After setting forth the applicable *Strickland* standard, *Sidebottom* noted that the error was raised on direct appeal, but was determined not to have resulted in plain error. 781 S.W.2d at 796–97. It then determined that, "[o]n the facts of the present case and the law as applied to them, *the bases for* the Court's finding of no manifest injustice on direct appeal serve now to establish a finding of no prejudice under the *Strickland* test." *Sidebottom*, 781 S.W.2d at 796 (emphasis added).

As is evident, *Sidebottom* did not state that a finding of no plain error on direct appeal necessarily equates to a finding of no prejudice under *Strickland*. It simply held that the facts that formed the *bases of* its finding of no plain error in that case also formed *the bases of* the finding of no *Strickland* prejudice on the post-conviction motion. In so doing, it properly applied the *Strickland* standard, not the plain error standard, stating, "*movant fails to show that, but for trial counsel's failure to object and then to request a mistrial, there was a 'reasonable probability that the re-*

*sult would have been different.'"* *Sidebottom,* 781 S.W.2d at 797 (emphasis added).

 Various opinions have taken this language from *Sidebottom,* and from two of this Court's later cases,[3] out of context and have incorrectly concluded that "[a] finding of no manifest injustice on direct plain error review establishes a finding of no prejudice for purposes of the *Strickland* test." *State v. Williams,* 945 S.W.2d 575, 583 (Mo.App. W.D.1997).[4] In so doing, they have lost sight of the difference in the standards of review *Strickland* teaches are applicable on plain error review as opposed to on post-conviction review. More specifically, while, under Missouri law, plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative, *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999), *Strickland* clearly and explicitly holds that an outcome-determinative test cannot be applied in a post-conviction setting.[5] 466 U.S. at 693, 104 S.Ct. 2052. Therefore, the two tests are not equivalents. To the extent that the cases relied on by the State and other Missouri cases apply a different standard, they are inconsistent with *Strickland* and should no longer be followed.

### D. Reasons for the Distinction in Applicable Standards of Review.

 The reason why the standards of review of preserved and unpreserved error on direct appeal are different from each other, and why both are in turn different from the standard for review of a post-conviction motion, is explained by the very different focuses of the inquiries under each standard. On direct appeal, the issue is whether the trial court erred in its rulings at trial. Appellate review of preserved error is "for prejudice, not mere error, and [it] will reverse only if the error is so prejudicial that it deprived the defendant of a fair trial." *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996). If no objection was made or the error was otherwise not preserved, then the trial court cannot normally be accused of error in its rulings, much less prejudicial error. In order to serve the need for accuracy in the outcome of a trial, appellate courts have

---

3. *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc 1990) ("Although Clemmons attempts to distinguish these claims because they were reviewed for plain error by this Court on direct appeal, [*Sidebottom*] held that the basis for this Court's finding of no manifest injustice on direct appeal served to establish a finding of no prejudice under the *Strickland* test."); *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994) ("[A]s in *Sidebottom,* . . . . the basis for finding no manifest injustice defeats a finding of prejudice under the *Strickland* test for failure to preserve the claim of error . . . .").

4. *See, e.g., Hamilton v. State,* 31 S.W.3d 124, 127 (Mo.App.W.D.2000); *State v. Kelley,* 953 S.W.2d 73, 91, 93 (Mo.App. S.D.1997); *State v. Williams,* 945 S.W.2d 575, 583 (Mo.App. W.D.1997); *State v. Suter,* 931 S.W.2d 856, 868 (Mo.App. W.D.1996); *State v. Clark,* 913 S.W.2d 399, 406 (Mo.App. W.D.1996); *State v. Chapman,* 936 S.W.2d 135, 141–42 (Mo.

App. E.D.1996); *State v. Davis,* 936 S.W.2d 838, 842 (Mo.App. W.D.1996); *State v. Leady,* 879 S.W.2d 644, 649 (Mo.App. W.D.1994); *State v. Anderson,* 862 S.W.2d 425, 437 (Mo. App. E.D.1993); *State v. McKee,* 856 S.W.2d 685, 693 (Mo.App.S.D.1993); *Hanes v. State,* 825 S.W.2d 633, 635 (Mo.App. E.D.1992).

5. Later cases may have misconstrued *Sidebottom*'s citation to *O'Neal v. State,* 766 S.W.2d 91, 92 (Mo. banc 1989), for the proposition that issues decided in the direct appeal "cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding." *Sidebottom,* 781 S.W.2d at 796. *O'Neal,* however, concerned a post-conviction claim based on an alleged error that had been preserved at trial but that, on direct appeal, had been determined not to be prejudicial. The standard for finding prejudice in the context of preserved error is lower than the standard for finding error under *Strickland,* and both are lower than the plain error standard.

the discretion to nonetheless review for plain error if manifest injustice would otherwise result. Rule 30.20; *State v. Johnson*, 968 S.W.2d 123, 127 (Mo. banc 1998). But, both of these standards presuppose "that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

 By contrast, when a post-conviction motion is filed alleging ineffective assistance of counsel, defendant is asserting "the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower." *Id.* The ultimate determination thus, is not the propriety of the trial court's actions with regard to an alleged error, but whether defendant has suffered a genuine deprivation of his right to effective assistance of counsel, such that this Court's confidence in the fairness of the proceeding is undermined. *Cf. Wilson v. State*, 813 S.W.2d 833, 834 (Mo. banc 1991); *Walker v. State*, 698 S.W.2d 871, 875 (Mo. App. W.D.1985).

Of course, as *Strickland* recognized, 466 U.S. at 694, 697, 104 S.Ct 2052 this theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test. Nonetheless, *Strickland* cautions that the distinction in the standards of review is important because there are a small number of cases in which the application of the two tests will produce different results. *Id.* at 697, 104 S.Ct 2052.

This is borne out in the several Missouri cases that have found a basis for post-conviction relief, or recognized that such a basis could exist, despite finding no plain error on direct appeal. For instance, in *Kenner v. State*, 709 S.W.2d 536 (Mo.App. E.D.1986), the court noted that on direct appeal it had held that the trial court did not commit plain error in admitting evidence of other crimes committed by defendant, where counsel did not object to admission of this evidence. *Id.* at 539. There, as here, the State argued that claims rejected on direct appeal are not cognizable in his post-conviction motion. *Id.* at 540. *Kenner* rejected this argument based on the distinction between the issues before a court on direct appeal and on post-conviction review, stating:

> In reviewing the trial court's decision on movant's Rule 27.26 motion *we are not determining the propriety of the admittance into evidence of testimony and photographs ... We are determining whether defense counsel's failure to timely and properly object to this evidence constitutes ineffective assistance of counsel thereby prejudicing movant.* We find that the untimeliness ... was highly prejudicial and is grounds for granting movant[']s Rule 27.26 motion.

*Id.* (emphasis added). Other opinions recognize that the two inquiries are different and that denial of a plain error claim is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found. *See, e.g., State v. Sublett*, 887 S.W.2d 618, 620 (Mo.App. W.D.1994) (court found no plain error, said it "could not say" how it might have ruled were the issue preserved, and remanded for determination of the separate issue whether counsel would be found ineffective under

Rule 29.15 for failing to object).[6]

## III. APPLICATION OF STRICKLAND TEST TO MITIGATION ISSUES

The remaining question is whether the instant case falls within this limited range of cases in which plain error did not exist, but *Strickland* prejudice is present because "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. 2052.

*A. First Prong of Strickland: Ineffective Assistance.*

■ To meet the first prong of *Strickland*, Mr. Deck was required to show by a preponderance of the evidence that his trial counsel was ineffective in offering instructions that omitted the two paragraphs from MAI–CR3d 313.44A that told the jurors they must consider circumstances in mitigation of punishment and need not be unanimous.[7] At the hearing, counsel acknowledged that she had thought the omitted paragraphs were in the instructions and that she had a responsibility to see that they were. She also agreed that mitigation was crucial to her defense, and that she wanted the court to give correct mitigation instructions and to define mitigation, but just failed to make a record of this. Indeed, while her own view of her effectiveness is not determinative, it is noteworthy that she testified, "We . . . copied the wrong version of 313.44," "I'm will-

ing to accept the blame for that," "I'm the first one to raise my hand and say I should've caught it and I didn't," and "I was ineffective not realizing that the instructions were incomplete." And, this was not a situation in which objection would have been futile. The missing paragraphs were actually required by MAI–CR3d 313.44A; a presumption of error would have arisen had they been requested but not given. Rule 28.02(c), (f).

■ Although counsel's actions should be judged by her overall performance, the right to effective assistance of counsel "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The submission of faulty instructions on the critical issue of mitigation was a "sufficiently egregious" error that it deprived Mr. Deck of "reasonably effective assistance" of counsel. *See also, Strickland*, 466 U.S. at 693–696, 104 S.Ct. 2052.

*B. Second Prong of Strickland: Counsel's Deficient Performance Prejudices Defense.*

■ The second prong of *Strickland* requires a determination whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052.

---

**6.** *See also State v. Storey*, 901 S.W.2d 886, 897–98, 900–03 (Mo. banc 1995); *State v. Meanor*, 863 S.W.2d 884, 892 (Mo. banc 1993) (in both Robertson, J., concurring in part and dissenting in part, and recognizing distinction between inquiries); *State v. Butler*, 24 S.W.3d 21, 44–45 (Mo.App. W.D. banc 2000) (concurring opinion of Judge Breckenridge finding no plain error but indicating issue presented serious question for post-con-

viction motion as to ineffectiveness of counsel in failing to timely object).

**7.** Of course, if this failure were part of a reasonable trial strategy, even if unsuccessful, it would not support a claim of ineffective assistance. *Rodden v. State*, 795 S.W.2d 393, 397 (Mo. banc 1990). But, counsel does not claim that the omission was a part of her trial strategy, and the record would not support such a claim.

In deciding this issue, the Court is mindful of the fact that this case involves capital punishment, and that the penalty of death cannot be imposed in an arbitrary and capricious manner. *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To assist in channeling the jury's discretion in deciding whether to impose a death sentence, the legislature has directed that the jurors must examine the circumstances in both aggravation and mitigation of punishment. *State v. Smith*, 649 S.W.2d 417, 430 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). It is to further this purpose that a series of jury instructions has been promulgated that guide the jury through these critical determinations, including MAI–CR3d 313.44A. Where an applicable MAI–CR instruction exists, it must be given to the exclusion of any other instruction. Rule 28.02(c); *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998).

This is particularly important where, as here, the issue is the consideration of mitigating circumstances in a death penalty case, for the jury is never required to impose the death penalty, no matter how egregious the crime. *Storey*, 986 S.W.2d at 464. Moreover, as the Supreme Court said in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), "there is a significant constitutional difference between the death penalty and lesser punishments." *Id.* at 637, 100 S.Ct. 2382. "Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Id.* at 638, n. 13, 100 S.Ct. 2382 *quoting, Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (opinion of Stewart, Powell and Stevens, JJ.).

Therefore, even where, as here, counsel failed to object to a failure to follow an applicable MAI–CR3d instruction, because the missing paragraphs would have guided the jury as to how to determine whether to impose death, it is all the more important to exercise care in deciding whether the prejudice prong of *Strickland* is met. Here, there are multiple circumstances that cause this Court to conclude that there is a reasonable probability that counsel's errors prejudiced the defense and affected the outcome of the trial.

The major focus of Mr. Deck's defense to the State's request for the death penalty was the existence of mitigating circumstances. The defense presented substantial evidence concerning the abuse Mr. Deck suffered as a child, the lack of parental love and his continual move from one foster home to another. It presented evidence that, despite all this, he continued to love and care for his younger siblings, scrounging for food for them and bathing them while his mother was out at clubs or with boyfriends. It showed how the Pucketts wanted to adopt him and give him a chance to grow up in a loving family, but he was instead returned to his mother and further abuse.

The missing paragraphs of the instruction told the jury about the need to balance this mitigating evidence with the aggravating circumstances focused on by the State, and what evidence the jury could consider in deciding mitigation. These paragraphs were thus central to the pivotal defense offered by Mr. Deck. But the jurors never heard them. Moreover, most of the jurors never heard an explanation of the concept of mitigation during voir dire, for defense counsel failed to give them one. While she was not required to do so, in the absence of such an explanation, the jurors were more dependent on the instructions.

Most tellingly, the jurors themselves indicated that they were confused about the very issue of mitigation. They sent the judge a note stating they were confused about what mitigation meant in Instruction 8 and asking for a legal definition of the term and, later, requesting a dictionary so they could look up the term themselves. While the court's denial of their requests was proper, the requests show that the jury was focusing on the issue of mitigation and may have been confused by what it meant as used in the instructions.

It is the jurors' focus on mitigation and their apparent confusion about it when considering whether to impose the death penalty that causes this Court to conclude that this case belongs in that small group of cases in which the *Strickland* standard of review leads to a different outcome than does the heightened standard applied on plain error review. For this reason, this Court holds that in this case defense counsel's professional incompetence in failing to include the two mitigation paragraphs or to object to their absence was so egregious as to entitle Mr. Deck to a new penalty phase trial.

In so holding, this Court does not suggest that the failure to give these two paragraphs is so inherently erroneous that it will always result in prejudice under the *Strickland* standard. Each case must be decided on its own facts. *State v. Beeler*, 12 S.W.3d 294, 299 n. 3 (Mo. banc 2000). But, on the particular facts of this case in which substantial mitigating evidence was offered, counsel's errors have so undermined this Court's confidence in the outcome of the trial that the Court concludes there is a reasonable probability that, but for counsel's unprofessional errors, the re-

sult of the proceeding would have been different.[8]

## IV. OTHER ERRORS

■■■ Mr. Deck contends the trial court erred in denying his Rule 29.15 motion as to the guilt phase of the trial because his appellate counsel failed to raise the trial court's error in overruling his pre-trial motion to disqualify the prosecutor's office due to an alleged conflict of interest. He says a conflict arose because an assistant prosecutor who was *not* involved in his prosecution had represented him on an *unrelated* burglary charge three years earlier. Mr. Deck's claim must fail because the earlier case in which his counsel was associated is not substantially related to the instant case and there is no claim that any confidential information was transmitted to the prosecutor in this case or that his former counsel had any involvement in this case. The cases to which Mr. Deck cites, *State v. Ross*, 829 S.W.2d 948, 949 (Mo. banc 1992), and *State v. Reinschmidt*, 984 S.W.2d 189, 192 (Mo.App. S.D.1998), are inapposite because in each of those cases defendant's counsel became associated in the prosecution of a former client after actually representing him in the same or a related matter.

■■■ Mr. Deck also claims the motion court clearly erred in ruling that Rule 29.15 is not unconstitutional because the rule's 90–day time limit is an unreasonably short time limit in violation of the Due Process Clause of the 14th Amendment. He admits this issue has been repeatedly rejected by this Court. This Court agrees; it is "a time-worn and oft-rejected charge." *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992). *See also Duvall v. Purkett*, 15

---

**8.** Because of the resolution of this issue, the other alleged errors raised by Mr. Deck as to the penalty phase of his trial itself or the alleged error in refusing to allow his counsel

to interview jurors about their penalty phase deliberations in order to support his Rule 29.15 motion for a new penalty phase trial are not reached.

F.3d 745, 748 n. 6 (8th Cir.1994). He asks for reconsideration of the issue in light of the Anti–Terrorism and Effective Death Penalty Act, but he does not have standing to raise this issue because he asserts it only hypothetically, in that he timely filed his post-conviction motion. *See State v. Kerr,* 905 S.W.2d 514, 515 (Mo. banc 1995) (there is no standing to raise "hypothetical instances in which the statute might be unconstitutionally applied").

## V. CONCLUSION

For the reasons set out above, this Court reverses the judgment to the extent it denies a new penalty phase trial. In all other respects the judgment is affirmed. The case is remanded.

All concur.