**Randy BOLDEN, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. ED 98888.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 26, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 13, 2014.

Application for Transfer Denied March 25, 2014.

See also 371 S.W.3d 802

Roxanna A. Mason, Assistant Public Defender, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Randy Bolden (Movant) appeals from the judgment of the Circuit Court of the City of St. Louis denying his Rule 29.15 motion for post-conviction relief. Movant claims the motion court clearly erred in denying his claim that defense counsel provided ineffective assistance when he "proposed" improper jury instructions that failed to include "multiple assailants" language as required by the Missouri Approved Instructions–Criminal on self-defense and defense of another.[1] We affirm.

### Factual and Procedural Background

#### 1. Jury Trial

On the evening of April 21, 2007, Movant and his sister, Emily Bolden, drove to the home of Fannie Powell and her adult daughter, Tiffany Powell, in search of Movant's then-girlfriend. A confrontation ensued, during which Emily[2] stabbed Fannie eleven times and Tiffany received a stab wound to her hand.

The State charged Movant and Emily each with first-degree assault of Tiffany, first-degree assault of Fannie, and two counts of armed criminal action.[3] The trial court tried Movant and Emily jointly in February 2009. At the trial, the State and the defense presented conflicting accounts of the April 2007 incident. According to the State's theory of the case, which was supported by the testimony of Fannie, Tiffany, and a neighbor who witnessed the fight, Movant and Emily initiated the conflict. The State's witnesses testified that Emily escalated a verbal confrontation to a physical fight when she stabbed Tiffany in the hand, and Movant then restrained Tiffany while Emily repeatedly stabbed Fannie.

In contrast, Movant and Emily's theory of defense was that Fannie and Tiffany were the initial aggressors and that Emily was lawfully acting in defense of Movant when she stabbed Fannie. In support of the defense theory, Movant testified that he knocked on Fannie's door because he was looking for his girlfriend and children. Shortly after Fannie answered the door, Tiffany and "a big guy" came outside and Fannie, Tiffany, and the man began to yell at Movant. As Movant was leaving, Tiffany stabbed Movant in the eye and the unidentified man hit Movant twice in the head, knocking him unconscious.

Emily testified that she was sitting in her car when Movant approached Fannie's door and was confronted by Fannie, Tiffany, and "kind of a big guy." Emily watched as Tiffany stabbed Movant in the face and the man hit Movant on the head, causing him to drop to the ground. Emily stated that she "grabbed" a knife and emerged from the car because "I just wanted to get my brother." According to Emily, she "started swinging the knife" at Fannie after Tiffany hit her "with a blunt object" on the top of her head. Emily explained, "I was trying to get my brother. That's all I wanted.... I was very afraid that my brother was going to be hurt and I was going to be hurt too."

---

1. Movant refers to MAI–CR3d 306.06 and MAI–CR3d 306.08, respectively.

2. To avoid confusion, we refer to the individuals involved in this case by their first names.

3. The State also charged Emily separately with second-degree assault and armed criminal action based on an alleged attack against Movant's girlfriend earlier in the day on April 21, 2007.

■ During the jury instruction conference, the prosecutor and defense counsel jointly proffered a defense-of-another instruction,[4] Instruction No. 14, modeled after MAI–CR 3d 306.08A. With respect to the joint submission, defense counsel stated as follows at the instruction conference:

> For the record, I had an instruction of defense of others, and counsel for the state and I collaborated over what we thought would be the best version given the change in the law and our disagreements over the language and settled upon the instruction that was—ultimately submitted by the State.

Instruction No. 14 provided, in pertinent part:

> A person can lawfully use force to protect another person against an attack unless, under the circumstances as she reasonable believes them to be, the person she seeks to protect would not be justified in using such force to protect [her]self. A person who is an initial aggressor, that is, one who first attacks or threatens to attack another is not justified in using force to protect [her]self from the counter-attack that [s]he provoked. If, under the circumstances as a person reasonably believed them to be, the person she seeks to protect was the initial aggressor, then she is not entitled to use force to protect the other person.
>
> In order for a person lawfully to use force in defense of another person, such a defender must reasonably believe such force is necessary to defend the person she is trying to protect from what [s]he reasonably believes to be the imminent use of unlawful force.

> But, a person acting in the defense of another person is not permitted to use deadly force unless she reasonably believes the use of deadly force is necessary to protect the person against death or serious physical injury.
>
> . . . .
>
> As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend [on] whether the belief turned out to be true or false.
>
> On the issue of defense of another person as to Count III, you are instructed as follows:
>
> First, if, under the circumstances as the defendant reasonably believed them to be, Randy Bolden was not the initial aggressor in the encounter with Fannie Powell, and
>
> Second, if the defendant reasonably believed that the use of force was necessary to defend Randy Bolden from what the defendant reasonably believed to be the imminent use of unlawful force by [Fannie] Powell, and
>
> Third, the defendant reasonably believed that the use of deadly force was necessary to protect Randy Bolden from death or serious or physical injury from the acts of Fannie Powell, then her use of deadly force is justifiable and she acted in lawful defense of another person.

As to Movant's charge of first-degree assault of Fannie based on accessory liability, the prosecutor proffered Instruction No. 17, which was modeled on MAI–CR 3d

319.06 and modified by 304.04. Instruction No. 17 provided:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 21, 2007, in the State of Missouri, Emily Bolden attempted to kill or cause serious physical injury to Fannie Powell by stabbing her, and

Second, that Emily Bolden in the course of such conduct caused serious physical injury to Fannie Powell, and then you are instructed that the offense of assault in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that assault in the first degree, the defendant acted together with or aided Emily Bolden in committing the offense, then you will find the defendant Randy Bolden guilty under Count III of assault in the first degree.

The trial court submitted Instruction Nos. 14 and 17 to the jury.

In closing arguments, the prosecutor urged the jury to find Movant guilty because "he was there and he participated and he was just as involved" as Emily in causing Fannie's and Tiffany's serious physical injuries. The prosecutor asserted that the defense-of-another justification did not apply because "one of the things in [the defense-of-others] instruction says

you can't be the initial aggressor. Well, in this case they were. And another thing it says is you have to be reasonable, and in this case they weren't."

In defense counsel's closing argument, he emphasized that the "burden is on [the State] to prove that Emily was not acting in lawful self-defense or defense of Randy." Defense counsel stated that Emily "got [the knife] out of the car because Randy was getting his butt kicked," and explained the jury instructions as follows:

[W]hat the instruction says is that if Randy Bolden was entitled to use lethal force to defend himself against serious physical injury or death, if Randy Bolden was entitled to use that, then Emily Bolden, being a party that was there, would also be entitled to use deadly force and/or force to protect him.

Now, we know the force that was employed against Randy was deadly force, deadly force being defined as force that causes serious physical injury and/or death. Randy Bolden was seriously physically injured. He lost his eyesight. . . .

So we know that Randy would have been in the position to use lethal force because he was in fact seriously physically injured. And that's how we know that Emily Bolden was justified in what she did, because she applied—she applied the deadly force also in order to protect her brother. She didn't do it fast enough though, because he ain't ever going to get his eyesight back.

After deliberations, the jury found Movant and Emily guilty on the counts of first-degree assault and armed criminal action relating to Fannie and acquitted them on the counts relating to Tiffany. The trial court sentenced Movant and Emily to concurrent terms of ten years' imprisonment

for first-degree assault and three years' imprisonment for armed criminal action.

### 2. Movant's Direct Appeal

Movant appealed his conviction on the grounds that the trial court erred in: (1) denying his motion for judgment of acquittal at the close of all of the evidence because the evidence was insufficient to support the conviction; and (2) accepting inconsistent verdicts. Significantly, Movant did not raise any issues relating to the jury instructions.

In an unpublished Rule 84.16(b) memorandum decision, we concluded that the evidence at trial was sufficient to demonstrate that Movant acted with, aided, or encouraged Emily in committing first-degree assault against Fannie and that Movant had the requisite mental intent to commit first-degree assault.[5] *State v. Randy Bolden*, 339 S.W.3d 628 (Mo.App. E.D. 2011). Based on our review of the record, we held that the following evidence supported Movant's conviction: Movant drove Emily to Fannie's house so she could beat up his girlfriend; Movant provided Emily with a knife; Movant forced Tiffany to the ground and restrained her while Emily attacked Fannie; and Movant and Emily intended their conduct as a "message" to Movant's girlfriend. *Id.*

We also considered Movant's claim that the doctrine of destructive contradictions rendered the State's evidence insufficient to support Movant's convictions and held that the doctrine of destructive contradictions was inapplicable. Finally, we held

that the trial court did not plainly err in accepting inconsistent verdicts because the verdicts were not inconsistent and there was no manifest injustice. *Id.*

### 3. Emily Bolden's Direct Appeal

Emily also appealed her conviction, alleging, among other claims, that the trial court plainly erred in submitting Instruction No. 14. *State v. Emily Bolden*, No. ED 94705, 2011 WL 4366416, at *1 (Mo. App. E.D.2011) (vacated by *State v. Emily Bolden*, 371 S.W.3d 802 (Mo. banc 2012)).[6] Unlike Movant, who did not challenge Instruction No. 14 on appeal, Emily argued that Instruction No. 14 was erroneous and prejudiced her case because, among other reasons, it "omitted explanatory language about imminent danger from those allegedly acting with the victim." *Id.* at *2.

In an unpublished opinion, this court affirmed Emily's conviction. *Id.* at *1. We rejected Emily's argument that Instruction No. 14 limited the jury to consider only Fannie's actions and concluded that Instruction No. 14 "permitted the jury to consider the actions of individuals other than [Fannie] in determining whether [Emily] acted in self-defense." *Id.* at *4. Because Instruction No. 14 defined "reasonably believe" as "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief," it allowed the jury "to consider the *situation* of [Emily] in determining whether she had a reason-

---

**5.** Eastern District Local Rule 405 prohibits use of Rule 84.16(b) memoranda in "unrelated cases." Use of Rule 84.16(b) memoranda in related cases is not prohibited.

**6.** When the Missouri Supreme Court grants transfer, the decision of the court of appeals is "necessarily vacated and set aside and may be referred to as *functus officio*," meaning "without further authority or legal compe-

tence." *State v. Norman*, 380 S.W.2d 406, 407 (Mo. banc 1964); Black's Law Dictionary (9th ed.2009). We discuss the court of appeals opinion solely to provide the procedural background and context of the present case. *See, e.g., Benton House v. Cook & Younts*, 249 S.W.3d 878, 883 (Mo.App. W.D.2008); *Manar v. Park Lane Med. Ctr.*, 753 S.W.2d 310, 313 (Mo.App. W.D.1988).

able belief that she was in imminent danger of harm." *Id.* (emphasis in original).

Emily moved to transfer her case to the Missouri Supreme Court. The Court granted her motion and affirmed her conviction. *Emily Bolden,* 371 S.W.3d at 805. The Court articulated the issue before it as: "... whether the joint submission of a defective jury instruction by the State and Defendant requires reversal." *Id.* The Court noted that Instruction No. 14 was "erroneous" because it "did not properly instruct the jury that it could consider the actions of multiple assailants when considering whether [Emily's] actions were reasonable...." *Id.* However, because Emily proffered the defective instruction, the Court declined to review for plain error, holding that the trial court does not have "a *sua sponte* duty to correct erroneous instructions proffered by the complaining party." *Id.* at 806.

In analyzing the propriety of plain error review, the Court acknowledged that, under *State v. Westfall,* 75 S.W.3d 278 (Mo. banc 2002), failure to submit a self-defense instruction supported by the evidence constitutes reversible error under plain error review. *Id.* at 805. However, the Court distinguished the circumstances here, where the trial court "did not fail to submit a defense-others instruction to the jury," *id.,* from a *Westfall* scenario, where the trial court's failure "to instruct on self-defense, even in the absence of a request for an instruction, and even if such an instruction was offered but not in proper form[,]" constitutes plain error. *Westfall,* 75 S.W.3d at 281 n. 9.

*4. Movant's Post–Conviction Relief Proceedings*

After this court affirmed Movant's conviction, he filed a pro se Rule 29.15 motion for post-conviction relief, which counsel later amended. In his motion, Movant alleged, among other claims, that defense counsel was ineffective "in agreeing to these incorrect instructions, rather than offering the proper instructions." More specifically, Movant asserted that defense counsel's failure to include in Instruction No. 14 the "multiple assailants" language, "which would have told the jury that it could consider the imminent use of unlawful force by aggressors acting with Fannie Powell, caused prejudice and excused the state from its burden." Movant also argued that counsel was ineffective in agreeing to Instruction No. 17, the State's instruction on Movant's accessory liability, which "omitted important mandatory text that would have referred the jury back to [I]nstruction 14." Movant argued that, as a result of this omission, "if the jury followed the instructions as written, even if it decided Emily acted in defense of Randy, it could not acquit Randy on those grounds."

The trial court held an evidentiary hearing on Movant's Rule 29.15 motion. At the hearing, Movant's post-conviction counsel asked defense counsel whether he had a reason to omit "the language in Instruction 14 that would explain that the actions of multiple assailants could be considered in determining whether the use of force was justified." Defense counsel responded, "No. I mean there's nothing I can think of at this point in time; no."

On cross-examination, the State asked defense counsel whether "the way the instructions were submitted to the jury handicapped [him] with regards to the arguments [he] wanted to make." Defense counsel admitted, "I was able to make the argument," but stated that, "If I made a mistake ... I should have included in the language for the instruction, you know, others as opposed to...." However, defense counsel also acknowledged that Instruction No. 14, as submitted, "did not handicap [him] from still arguing [his]

points ..." and stated that he did not think he "would've changed [his] closing any...." Defense counsel further testified as follows:

[PROSECUTOR]: It wouldn't have changed your strategy any?

[DEFENSE COUNSEL]: No.

[PROSECUTOR]: You would've been able to still argue what you wanted to argue?

[DEFENSE COUNSEL]: Correct.

Finally, when post-conviction counsel asked if there was a "possibility that the outcome would've been different as to Randy," defense counsel's sole comment was as follows: "Yeah, I suppose." [7]

The motion court issued findings of fact and conclusions of law denying Movant's Rule 29.15 motion on the grounds that Movant failed to show that he suffered prejudice as a result of defense counsel's alleged error. The motion court explained:

The Court does not believe the omission of language regarding multiple assailants from Instruction 14 affected the jury's verdict finding Emily Bolden guilty of assaulting Fannie Powell, and if the jury rejected the defense claim of defense-of-another with regard to Emily Bolden it is illogical to assume they would have found she was acting in defense-of-another for purposes of the charges against Randy. For this reason also, the Court does not believe the omission of a cross-reference in Instruction 17 to Instruction 14 had a decisive effect on the verdicts against Randy for Emily's assault on Fannie Powell. The Court notes that any error in Instruction 14 did not prevent [defense counsel]

from arguing the defense of defense-of-another, and that the focus of the prosecutor's closing argument was on the issue of whether Randy and Emily were the initial aggressors.

Movant appeals.

### Standard of Review

Our review is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). The motion court's findings of fact and conclusions of law are presumed correct and will be deemed clearly erroneous only if, after reviewing the entire record, we are left with the firm impression that a mistake has been made. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009).

### Discussion

In his sole point on appeal, Movant claims the motion court clearly erred in denying his Rule 29.15 motion because defense counsel was ineffective in proposing jury instructions "that excluded vital language regarding the defense of 'defense of others' from 'multiple assailants.'" Movant further asserts that, had Instruction No. 14 properly instructed the jury to consider the actions of Tiffany and the unidentified man when determining whether Emily stabbed Fannie in lawful defense of Movant, "there is a substantial likelihood that the outcome of the trial would have been different." Although the State acknowledges that Instruction No. 14 did not correctly instruct the jury that it could consider the actions of multiple assailants when considering whether Emily's actions were justified, it maintains that the motion

---

**7.** With respect to the verdict against Emily, defense counsel testified: "I understood why the jury rendered a verdict against Emily because of the eleven stab wounds; all right?.... [S]elf-defense is one thing, but

eleven stab wounds, a reasonable juror could come in and say, well, that's probably not self-defense at some point with eleven stab wounds."

court properly denied Movant post-conviction relief because Movant failed to prove that he was prejudiced by defense counsel's error with respect to Instruction No. 14.

■ A movant bears a heavy burden when attempting to show that counsel was ineffective. *State v. Powell* 798 S.W.2d 709, 717 (Mo. banc 1990). To prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The prejudice prong of the *Strickland* test requires that a movant show "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002) (emphasis in original) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

■ "Generally, instructional errors are not cognizable in a proceeding for post-conviction relief unless such errors rise to the level of a constitutional error substantially depriving a defendant of the right to a fair trial." *Manwarren v. State*, 223 S.W.3d 899, 903 (Mo.App. S.D.2007). "Instructional error constitutes reversible error only when there was error in submitting the instruction and that error prejudiced the defendant." *Tilley v. State*, 202 S.W.3d 726, 733 (Mo.App. S.D.2006). In the context of an ineffective assistance of counsel claim based on instructional error, "'prejudice' is the potential for confusing or misleading the jury." *Manwarren*, 223 S.W.3d at 903 (quotation omitted).

■ As an initial matter, we note that Movant alleges only that, but for the defective instruction, there was a substantial likelihood that the outcome of the trial would have been different. Movant does not contend that the errors in Instruction No. 14 constituted error substantially depriving him of his right to a fair trial. As previously stated, to obtain postconviction relief on a claim that counsel was ineffective in proffering or failing to object to defective instructions, a movant must show that counsel's error substantially deprived him of his right to a fair trial.[8] *See, e.g., Manwarren*, 223 S.W.3d at 903; *Purvis v. State*, 215 S.W.3d 745, 749(Mo.App. S.D. 2007).

In any event, the record does not support the conclusion that the absence of the appropriate "multiple assailants" language from Instruction No. 14 affected Movant's right to a fair trial because the instruction did not restrict the jury to a consideration of only Fannie's actions when determining whether Emily's use of deadly force against Fannie was justified. Rather, In-

---

8. We also note that Movant has only superficially argued that a preponderance of the evidence demonstrates that trial counsel was ineffective in offering Instruction No. 14, thereby establishing the first prong of *Strickland*. Where counsel proffers a defective instruction, the *Deck* Court requires a finding that the error was "sufficiently egregious" to meet the first *Strickland* prong. *Deck*, 68 S.W.3d at 429. Because our Supreme Court's approach in *Emily Bolden*, and in particular, its differentiation between this case and *State v. Westfall*, undermines the notion that the proffer of Instruction No. 14 was "sufficiently egregious," and because both parties focus on *Strickland's* second (or prejudice) prong rather than the first (or performance) prong, we decline to determine whether Movant met the first prong. We emphasize, however, that to obtain post-conviction relief, movants have a responsibility to establish both *Strickland* prongs. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

struction No. 14 broadly advised that an individual may lawfully use force in defense of another person if she "reasonably believe[s] such force is necessary to defend the person she is trying to protect from what [s]he reasonably believes to be the imminent use of unlawful force." The instruction defined "reasonably believe" to mean "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person *in the same situation* to the same belief." (emphasis added). Thus, the instruction directed the jury to consider Emily's and Movant's "situation," which included the alleged actions of Tiffany and the unidentified man, before determining whether Emily's use of deadly force against Fannie was necessary to protect Movant from death or serious physical injury. *See, e.g., State v. Goodine*, 196 S.W.3d 607, 621 (Mo.App. S.D.2006). Because Instruction No. 14's "in the same situation" language permitted the jury to consider the actions of Fannie and others when determining whether Emily's use of deadly force was justified, Movant cannot establish that the instruction confused or misled the jury such that Movant was substantially deprived of the right to a fair trial.

Even if, under these circumstances where Movant failed to challenge the alleged instructional error on direct appeal, a substantial likelihood of a different outcome at trial were sufficient to entitle Movant to a new trial, Movant did not demonstrate that the outcome of the trial would have been different had counsel proffered a properly worded defense-of-another instruction. The record establishes that the overwhelming evidence at trial did not support Movant's theory that Emily stabbed Fannie in defense of Movant. *See, e.g., Stewart v. State*, 387 S.W.3d 424, 430 (Mo.App. S.D.2012). The undisputed evidence at trial revealed that Emily inflicted on Fannie eleven stab wounds.

Fannie testified that, as a result of the attack, she received twenty-five stitches on her head, eleven stitches on her shoulder, eight stitches on her arm, and six stitches in her finger. And, although Emily and Movant presented evidence that Tiffany and the unidentified man used force against them, there was no evidence at trial suggesting that *Fannie* used or threatened to use unlawful force during the incident. Lawful use of force in defense of another required Emily to reasonably believe that Fannie was using, or imminently going to use, unlawful force against Movant. *See Goodine*, 196 S.W.3d at 623. While "the 'reasonable belief' that the victim is going to use or imminently going to use force may be caused by the actions of multiple assailants," the central focus in the first-degree assault charge is between Emily, acting with Movant, and Fannie. *See id.* at 622. Because the evidence at trial did not support Movant's defense that Emily reasonably believed deadly force was necessary to protect Movant from Fannie and her associates, inclusion of the multiple assailants language would not have resulted in a different outcome at trial.

Furthermore, we are mindful of the *Emily Bolden* Court's refusal to review for plain error Emily's claim on direct appeal that the trial court erred in submitting Instruction No. 14 to the jury. *Emily Bolden*, 371 S.W.3d at 806. Rule 30.20 requires our appellate courts to decline to exercise plain error review unless the claim presented "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice resulted[.]" *State v. Agee*, 350 S.W.3d 83, 95 (Mo.App. S.D.2011) (quotation omitted). More specifically, " '[u]npreserved claims of [instructional] error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur.' " *State v. Oud-*

*in,* 403 S.W.3d 693, 697 (Mo.App. W.D. 2013) (quoting *State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001)).[9] "Manifest injustice or miscarriage of justice will result only if it is apparent that the jury's verdict was tainted by the instructional error." *State v. Condict,* 65 S.W.3d 6, 15 (Mo.App. S.D.2001). In declining to review Emily's claim that the absence of the "multiple assailants" language from Instruction No. 14 constituted plain error, we believe the Supreme Court implicitly concluded that Instruction No. 14 did not cause a manifest injustice or a miscarriage of justice. *See Deck,* 68 S.W.3d at 427–28 ("If no objection was made or the error was otherwise not preserved, then the trial court cannot normally be accused of error in its rulings, much less prejudicial error. In order to serve the need for accuracy in the outcome of a trial, appellate courts have the discretion to nonetheless review for plain error if manifest injustice would otherwise result.").

 We presume, nevertheless, that an appellate court's refusal to exercise plain error review, like its denial of a plain error claim, is not dispositive of the question whether trial counsel provided ineffective assistance in proffering a defective instruction. *See Deck,* 68 S.W.3d at 428. However, the "theoretical difference" in the plain error and post-conviction relief standards of review "will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Id.* As our Supreme Court has noted, there are only a limited range of cases in which plain error does not exist but *Strickland* prejudice is found and in such cases, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 425 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

In the instant case, the missing "multiple assailants" language did not affect defense counsel's argument that Emily stabbed Fannie in defense of Movant and there is no support in the record for a conclusion that the defective instruction either confused or misled the jury. Additionally, the missing language did not relate to the major focus of Movant's defense, which was that Fannie, Tiffany, and the unidentified man were the initial aggressors. *Cf. id.* at 430–31 (holding that defense counsel's failure to proffer proper mitigation instructions during penalty phase constituted ineffective assistance where (1) the missing instructional language would have guided the jury in determining whether to recommend the death penalty, (2) the major focus of the movant's defense to the State's request for the death penalty was the existence of mitigating circumstances, and (3) the jurors indicated they were confused about the issue of mitigation). Based on the above, defense counsel's errors here do not so undermine this court's confidence in the outcome of the trial that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

---

9. Even where an appellate court reviews for plain error, instructional error seldom constitutes plain error, which requires a defendant to prove that the error was outcome determinative. *State v. Roe,* 6 S.W.3d 411, 415 (Mo. App. E.D.1999); *State v. Cook,* 386 S.W.3d 842, 844 (Mo.App. S.D.2012). "Instructional error rises to the level of plain error when the appellant demonstrates 'that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice.'" *Oudin,* 403 S.W.3d at 697 (quoting *State v. Stover,* 388 S.W.3d 138, 154 (Mo. banc 2012)).

In support of his claim that defense counsel's submission of a defective jury instruction prejudiced his case, Movant relies on *State v. Beck*, 167 S.W.3d 767 (Mo. App. W.D.2005) (overruled in part by *Emily Bolden*, 371 S.W.3d at 806) and *State v. Mangum*, 390 S.W.3d 853 (Mo.App. E.D. 2013). In both cases, the defendants appealed their convictions on the grounds that the trial court erred in submitting defective self-defense instructions and obtained reversals.

In *Beck*, the defendant, who was charged with second-degree assault, presented evidence that, at the time he stabbed the victim, he was defending himself against an attack by multiple assailants. *Beck*, 167 S.W.3d at 770. However, the defendant in *Beck* proffered a self-defense instruction that did not inform the jury that, when determining whether the defendant acted in self-defense, it could consider, not only the actions of the victim, but also the victim's friends. *Id.* The prosecutor highlighted the instructional error in his closing arguments, stating: "I would suggest you read the Court's instruction to you on self-defense. It only relates to what [the victim] did, not what anybody else—what the defendant claims somebody else did." [10] *Id.* at 771. On appeal, the court held that the trial court plainly erred in submitting to the jury the defective instruction, which "effectively gave the State a pass on proving . . . that the appellant did not act in lawful self-defense when he stabbed the victim[.]" *Id.* at 789.[11]

In *Mangum*, the State charged the defendant with first-degree assault for shooting the victim, his girlfriend's sister. *Mangum*, 390 S.W.3d at 857. At trial, the defendant presented evidence that he fired the gun in self-defense because he was under attack by the victim and his girlfriend, who wielded a crowbar. *Id.* at 858. Despite this evidence, the trial court submitted to the jury the State's self-defense instruction which did not reflect that the defendant's use of deadly force was based upon an attack by multiple assailants. *Id.* at 860. In closing arguments, the prosecutor emphasized the instruction's requirement that, to find the defendant's actions justified, the jury "had to believe [the victim's] actions would cause death or serious physical injury." *Id.* at 865–66. The jury found the defendant guilty, and the defendant appealed. *Id.* at 859. Following *Beck*, this court held that the trial court plainly erred in failing to *sua sponte* modify the jury instruction because: "it was the State's burden to prove, beyond a reasonable doubt, that the defendant did not act in lawful self-defense when he shot his gun" and "[t]he instructions submitted excused the State from this burden." *Id.* at 869.

*Beck* and *Mangum* are procedurally and factually distinguishable. First, both cases involved direct appeals alleging trial court error, not ineffective assistance of counsel. *Beck*, 167 S.W.3d at 770; *Mangum*, 390 S.W.3d at 855. In addition, in *Mangum*, unlike here, "the record contains no indication that defendant proffered the self-defense instruction of which he now complains." *Mangum*, 390 S.W.3d at 861. And in *Beck*, the basis for the reversal on plain error review, that defendant proffered an incorrect instruction, was rejected

---

10. The prosecutor also declared: "[U]nder the law, whether we like it or not, [the defendant] is entitled to react only against what [the victim] did, not what some other people supposedly did." *Beck*, 167 S.W.3d at 771.

11. The Supreme Court overruled *Beck* to the extent that it held that a trial court had a duty to *sua sponte* correct the defective jury instruction that the defendant proffered to the trial court. *Emily Bolden*, 371 S.W.3d at 806.

in *Emily Bolden. Emily Bolden,* 371 S.W.3d at 806.

Most importantly, in closing arguments, the prosecutors in *Beck* and *Mangum* explicitly advised their respective juries that they could only consider the acts of the victims when determining whether the defendants' use of deadly force was justified. *Beck,* 167 S.W.3d at 771; *Mangum,* 390 S.W.3d at 865–66. As a result of the prosecutors' arguments, the *Beck* and *Mangum* courts were unable to conclude that the language of the self-defense instructions adequately informed the juries that they could consider the totality of the circumstances, which would include the actions of other assailants. *Beck,* 167 S.W.3d at 784; *Mangum,* 390 S.W.3d at 865–66. Unlike the prosecutors in *Beck* and *Mangum,* the prosecutor in the instant case did not direct the jury to consider only the actions of Fannie and ignore those of Tiffany and the unidentified male when determining whether Emily reasonably believed deadly force was necessary to protect Movant from the imminent use of unlawful force. Rather, the prosecutor argued that the defense-of-another justification did not apply because Emily and Movant were the initial aggressors, not because Emily did not reasonably believe deadly force was necessary.

■ In the argument portion of his brief, Movant raises issues with Instruction No. 17 that are not encompassed in his point relied on.[12] Specifically, Movant argues that, "even if Instruction 14 had not suffered serious defects, the jurors would not have known it applied to [Movant]" because Instruction No. 17, the verdict director for Movant's charge of first-de-

gree assault, "completely omitted any reference to defense of others—a reference which is required by MAI–CR3d 304.04, the instruction on a defendant's responsibility for the conduct of others." Movant maintains that, as a result of the omitted cross-reference, the jury could not acquit Movant of first-degree assault of Victim even if it found that Emily stabbed Victim in lawful defense of Movant.

In its findings of fact and conclusions of law, the motion court found that the omission of a cross-reference in Instruction No. 17 to Instruction No. 14 did not affect the verdict against Movant for Emily's assault on Fannie because: "if the jury rejected the defense claim of defense-of-another with regard to Emily Bolden it is illogical to assume they would have found she was acting in defense-of-another for purposes of the charges against Randy." In other words, the motion court found that, given that Movant's guilt was based on Emily's assault of Fannie and the jury found that Emily's actions were not justified by the lawful defense of another, a cross-reference to the self-defense instruction would not have changed the jury's verdict. We cannot say that the motion court's conclusion was clearly erroneous. Point denied.

### Conclusion

The judgment of the motion court is affirmed.

LISA S. VAN AMBURG, P.J., and GARY M. GAERTNER, Jr., J., concur.

---

**12.** "Claims of error that first appear in the argument portion of a brief but are not included in the point relied on are not preserved for review." *Moore v. State,* 318 S.W.3d 726, 729 (Mo.App. E.D.2010); *see*

*also* Rule 84.04(e). Nevertheless, we exercise our discretion and consider Movant's argument relating to Instruction No. 17. *See, e.g., State v. Newsom,* 299 S.W.3d 784, 788 (Mo. App. S.D.2009).