

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| **MIGUEL TORRES,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86258** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **NOVEMBER 26, 2024** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Livingston County, Missouri**
The Honorable Ryan W. Horsman, Judge

Before Division Three:  Mark D. Pfeiffer, Presiding Judge, Gary D. Witt, Judge and
Thomas N. Chapman, Judge

Miguel A. Torres ("Torres") appeals a judgment from the Circuit Court of Livingston County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 29.15.[1]  Torres raises five points on appeal and argues the motion court clearly erred in denying his motion for post-conviction relief because Torres's trial counsel ("Counsel") was ineffective because Counsel:  Point I, as to Count I, failed to object to the term "blade" as used in Instruction 5 and failed to use a neutral term in Instruction 6; Point II, failed to object to the term "knives" as used in Instruction 7 for Count II; Point III, failed to object to the term

---

[1] All rule references are to the Missouri Supreme Court Rules (2024).

"garrote" as used in Instruction 9 for Count III; Point IV, failed to offer a nested lesser-included offense instruction for Count III; and Point V, failed to object to Investigator's testimony regarding the video recordings.[2]  We affirm the judgment of the motion court.

**Factual and Procedural Background**

Torres was convicted of three counts of possession of an unlawful item in a county jail and one count of damage to jail property following a jury trial, and was sentenced to concurrent terms of twenty years' imprisonment for each possession count and five years' imprisonment for the damage to jail property.  Torres appealed his convictions and sentences.  *State v. Torres*, 626 S.W.3d 316 (Mo. App. W.D. 2021).  The facts of the underlying criminal case, as set forth in this Court's opinion on direct appeal, are as follows:

> In September 2018, Torres was detained at the Daviess-DeKalb Regional Jail (DDRJ), where [K.J.] worked as a sergeant and assistant shift commander.  On September 22, 2018, Torres advised [K.J.] that detainees were making weapons out of a missing food tray.  Torres suggested that [K.J.] not act on the information at that time to avoid the risk that the weapons would be moved.  Two days later, [K.J.] met with Torres again to follow up on the prior report, and, at that time, Torres produced "a cardinal tool and two different weapons that appeared to be made out of the tray that was missing."  Torres also advised [K.J.] of where the weapons had been hidden.  Torres indicated that the weapons had been created in E Hall (the protective custody area) and were being passed to detainees in B tank through the cleaning cart inside the mop bucket.
> The same day that Torres provided the weapons to [K.J.], Lieutenant [ ] of the DDRJ conducted a sweep of B tank, where Torres was housed, and discovered a little sharp piece of metal hidden on the top of the doorframe near Torres's bunk.  A still image captured from video

---

[2] Pursuant to section 509.520, RSMo. (2023), we do not use any witness names other than parties in this opinion.

2

surveillance showed Torres accessing the metal piece two weeks earlier on September 9, 2018.

[K.J.] met with Torres again on September 28, 2018, and, at that time, Torres advised that the detainees now had a plastic cereal bowl that they were using in an attempt to create another weapon by microwaving and manipulating the plastic.

On September 26, 2018, Torres met with Investigator [ ] of the DDRJ and reported that "inmates in E hall were making weapons that were being transferred on [sic] the mop bucket or cleaning cart tools under the bucket, and they were being taken to B tank to give to another inmate to take revenge on a guard." Following Torres's reports, [Investigator] began looking into Torres's claims by first reviewing video footage from E hall. After reviewing the video footage of the areas Torres identified, [Investigator] was unable to confirm Torres's reports, so he went back to where the weapons were found and started working backwards to discern the source of the weapons. He reviewed video footage depicting Torres from August 27, 2018, through September 24, 2018.

A video image from September 3, 2018, showed Torres sharpening the small metal blade found above his doorframe and then brushing the floor of his cell to disseminate the shavings. Another video clip from the same day showed Torres with a cord, stretching and twisting it with a pencil. Video footage from September 12, 2018, showed Torres placing the same cord around another inmate's neck, demonstrating how it could be used. Two days later, another clip showed Torres "pointing out toward the walkway where the guards traverse back and forth, and he's showing . . . cutting motions as how you would use that cord." More footage from later that day showed Torres shaving his arm with the small metal blade to test its sharpness.

Video from September 19, 2018, showed Torres hiding a meal tray under his mattress, and video from the following day depicted Torres with a meal tray that appeared to be missing a portion. Another video from September 22, 2018, depicted Torres making a sawing motion, with a partial meal tray sitting in the back of his cell. Video from later that morning showed Torres hiding a homemade knife in the bed frame of the top bunk. On September 23, 2018, Torres was again seen on video making a sawing motion in his cell, followed by him brushing off debris, and holding a piece of a meal tray. Another clip from that day showed Torres

3

sliding a piece of paper in a gap near a shower stall to test if a knife would fit. And yet another clip from later that day showed Torres holding the longer of the two knives. A final clip showed Torres placing the knives in his sock, where he later removed the knives to provide them to [K.J.].

*Id.* at 319-20. This Court affirmed Torres's convictions and sentence, and issued its mandate on August 18, 2021. Torres filed a timely *pro se* motion for post-conviction relief pursuant to Rule 29.15. Torres's appointed counsel filed an untimely amended motion, raising seven claims of ineffective assistance of trial counsel. Upon Torres's motion to declare abandonment, the motion court found Torres had been abandoned due to his appointed counsel's failure to timely file the amended motion, and thus the appropriate remedy was for the motion court to consider the amended motion on the merits. *See Washington v. State*, 681 S.W.3d 347, 352 n. 3 (Mo. App. E.D. 2023).

Pertinent to this appeal, in Torres's amended motion, he alleged trial counsel was ineffective for: failing to object to the use of the terms "blade," "knives," and "garrote," in the jury instructions as to Counts I-III respectively and failing to replace "blade" with a neutral term in Instruction 6 as to Count I; failing to offer the lesser-included offense instruction for Count III; and failing to object to Investigator's trial testimony as it was speculative and conclusory. An evidentiary hearing was held, and Torres and Counsel testified.[3] Torres's testimony related to matters not relevant to this appeal.

Counsel testified he did not object to the jury instructions that included the terms: "blade" as to Count I; "knives" as to Count II; and, "garrote" as to Count III. However,

---

[3] Another attorney assisted in the underlying criminal trial; however, it is undisputed that Counsel was solely responsible for all decisions made during the trial.

Counsel acknowledged the way each item was written in the jury instructions was the way it was listed in the charging document. Counsel agreed that it should have been up to the jury to decide whether the items listed in Counts I-III were weapons, and agreed that a neutral term should have been used. Counsel stated there was no strategic reason for not objecting to the jury instructions and testified, "I have been trained better than that. We're taught to object to the verdict directors, you're supposed to lodge an objection. I knew better than that and I don't have any reason why I wouldn't have objected." While Counsel submitted lesser-included-offense instructions for Counts I and II, he did not do so for Count III. Counsel could not think of a reason as to why he chose to not submit a lesser-included-offense instruction as to Count III, and stated "I think that may have just been a mistake on my end of things." Counsel, however, did recall having a conversation about how the piece of string, or the "garrote" that the State charged, would not fit the description of being an item of personal property, which would have been the instruction for the lesser-included offense.

According to Counsel, Investigator's trial testimony narrating the video footage of Torres at DDRJ was objectionable as it was purely speculative, and Counsel had no strategic reason for his failure to object.[4] Counsel agreed that it is common for law enforcement, such as Investigator, to testify about matters they see. Specifically, Counsel agreed Investigator had unique knowledge regarding this case as to the interior structure of the jail including the bunk set up, bunk make up, and the items found in Torres's bunk.

---

[4] There is no audio in the surveillance videos.

Further, Counsel acknowledged that Investigator drafted the case's reports and probable cause statement. Counsel believed Investigator's testimony as to the videos of Torres touched on issues of Torres's intent and purpose, which were issues for the jury to decide.

On March 24, 2023, the motion court issued findings of fact, conclusions of law, and judgment denying Torres's motion for post-conviction relief. This appeal follows.

**Standard of Review**

"This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (citing Mo. Sup. Ct. R. 29.15 (k)). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Deen v. State*, 550 S.W.3d 135, 139 (Mo. App. W.D. 2018) (internal citation omitted). We defer to "the motion court's superior opportunity to judge the credibility of witnesses." *Davis*, 486 S.W.3d at 905 (internal citation omitted).

To be entitled to post-conviction relief for ineffective assistance of counsel Torres must show: (1) Counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in the same or a similar situation, and (2) Counsel's failure prejudiced Torres. *See Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* (internal quotation omitted). "If

6

a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief." *Martin v. State*, 655 S.W.3d 195, 199 (Mo. App. W.D. 2022).

**Points I-III Jury Instructions**

**Analysis**

Torres argues the motion court clearly erred in denying his motion for post-conviction relief because he received ineffective assistance of trial counsel in that Counsel: Point I, failed to object to the term "blade" as used in Instruction 5 and failed to use a neutral term for Instruction 6; Point II, failed to object to the term "knives" as used in Instruction 7; and Point III, failed to object to the term "garrote" as used in Instruction 9. For ease of analysis, Points I-III will be addressed together.

Jury Instructions 5, 7, and 9 relate to the three separate counts of possession of an unlawful item in a jail pursuant to section 221.111.1(4). In pertinent part, the jury instructions were as follows:

> Instruction 5: First, that on or between August 30th, and September 24th, 2018, in the State of Missouri, the defendant knowingly possessed a sharpened metal *blade*, and Second, that the sharpened metal blade *was a weapon* that may be used in such a manner as to endanger the safety or security of the institution or as to endanger the life or limb of any prisoner or employee thereof . . . . (emphasis added).

> Instruction 7: First, that on or between August 30th and September 24th, 2018, in the State of Missouri, the defendant knowingly possessed plastic *knives*, and Second, that the plastic knives *were weapons* that may be used in such a manner as to endanger the safety or security of the institution or as to endanger the life or limb of any prisoner or employee thereof . . . . (emphasis added).

> Instruction 9: First, that on or between August 30th and September 24th, 2018, in the State of Missouri, the defendant knowingly possessed a *garrote*, and Second, that the garrote *was a weapon* that may be used in such a manner as to endanger the safety or security of the institution or as

7

to endanger the life or limb of any prisoner or employee thereof . . . .
(emphasis added).

As to each of these instructions, Torres asserts the jury was absolved of its task in determining whether the object was a weapon because each item as listed — blade, knives, and garrote — are inherently weapons. Torres argues Counsel was ineffective in failing to object because Counsel had no strategic reason for failing to do so, and it is well-established under state law that jury instructions must be "simple, brief, impartial, and free from argument."

"[T]o obtain postconviction relief on a claim that counsel was ineffective in proffering or failing to object to defective instructions, a movant must show that counsel's error substantially deprived him of his right to a fair trial." *Bolden v. State*, 423 S.W.3d 803, 811 (Mo. App. E.D. 2013) (internal citation omitted). "In the context of an ineffective assistance of counsel claim based on instructional error, prejudice is the potential for confusing or misleading the jury." *Id.* (internal citation and quotation omitted). Torres has failed to show Counsel's alleged errors substantially deprived him of his right to a fair trial.

At the evidentiary hearing, Counsel testified that he did not have a strategic reason for failing to object to the jury instructions. However, Counsel agreed that the way each item was written in the jury instructions was the way it was listed in the charging document. The motion court found that there was no evidence that Counsel's performance fell below an objective standard of reasonableness. Additionally, the

8

motion court was "not convinced by a reasonable probability that any alternative description of the items would have resulted in a different outcome." We agree.

For Counts I-III, the jury's role as the fact-finder was to determine whether Torres possessed the items he was alleged to possess, **and** also whether each of those items was a weapon that could be used in a harmful manner. While there are certainly alternative descriptions that could have been used, the jury instructions as written did not alter the jury's role because the jury had the opportunity to independently determine whether the items Torres was accused of having were weapons and if he was guilty under section 221.111.1(4). The State properly argued in closing that it had the burden to establish both possession of the items, and that each item was in fact a weapon. Extensively discussed by both parties in closing argument was whether the items in his possession actually constituted the items as described in the jury instructions (i.e., whether the metal item was in fact a sharpened blade, whether the plastic items were in fact knives, and whether the string was in fact a garrote) and also whether each item constituted a weapon. At trial, the jury heard testimony from Investigator about the listed items, watched surveillance videos of Torres with the items, and viewed the physical items as they were entered into evidence. "[I]t is the jury's role to determine the credibility of witnesses, resolve conflicts in testimony, and weigh evidence . . . ." *State v. Kuehnlein*, 456 S.W.3d 510, 514 (Mo. App. E.D. 2015). The jury was not limited in its ability to determine whether Torres possessed the items he was accused of having and whether those items were in fact weapons.

9

This is further evidenced by the jury's guilty verdicts as to Counts I and II.[5]  As for

Counts I and II, the jury was also instructed with lesser-included offenses under section

221.111.1(3).  The jury instructions provided in relevant part:

> Jury Instruction 6:  First, that on or between August 30, 2018 and September 24, 2018, in the State of Missouri, the defendant knowingly possessed a sharpened metal blade, and Second, that the sharpened metal blade was *an article or item of personal property* which a prisoner is prohibited by rule of [DDRJ] from receiving or possessing . . . . (emphasis added)

> Jury Instruction 8:  First, that on or between August 30, 2018 and September 24, 2018, in the State of Missouri, the defendant knowingly possessed *plastic items* in the [DDRJ], and Second, that the plastic items *were articles or items of personal property* which a prisoner is prohibited by rule of [DDRJ] from receiving or possessing . . . . (emphasis added)

The jury rejected these lesser-included-offense instructions and determined the

items Torres possessed were in fact weapons, as evidenced by Torres's guilty verdicts for

Counts I and II, as submitted by Instructions 5 and 7 respectively.  As for Count I, the

jury determined the metal blade was not an item "of personal property," but rather a

weapon.  Further, as to Count II, the jury did not find Torres possessed "plastic items"

and that those were items of "personal property," but rather concluded the items were

plastic knives and that the knives were weapons.  We disagree with Torres's assertion that

he was prejudiced by Counsel's alleged errors.  The jury was fully able to make an

---

[5] In Point IV, Torres argues Counsel was ineffective for failing to request a lesser-included-offense instruction as to Count III.  We address this argument later in the opinion.  However, we briefly note that even without the lesser-included-offense instruction for Count III we find Torres has failed to establish Counsel's alleged error in failing to object to the term "garrote," as listed in Instruction 9, deprived him of his right to fair trial because of the aforementioned reasons.

10

independent determination as to whether the objects listed were weapons, and it clearly found that they were. Torres has failed to show that the trial outcome would have been different, but for Counsel's failure to object to the jury instructions.

Points I-III are denied.

**Point IV: Lesser-Included Offense**

**Analysis**

Torres's fourth point on appeal argues that the motion court clearly erred in denying his motion for post-conviction relief because Counsel was ineffective as he failed to offer a nested lesser-included-offense instruction for Count III, possession of a *garrote*.

"To prevail on a claim that counsel was ineffective for failing to request a lesser-included offense instruction, [movant] must demonstrate the evidence would have required the trial court to submit the instruction had one been requested, that the decision to not request the instruction was not reasonable trial strategy, and that prejudice resulted." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (internal citation and quotation marks omitted). "Even where the evidence supports the submission of a lesser-included offense instruction, [movant] must still overcome the presumption that counsel's decision not to request the instruction was reasonable trial strategy." *Id.* (internal quotation omitted). Torres has failed to overcome the presumption that Counsel's decision was not reasonable trial strategy.

Torres argues that Counsel's failure to request the lesser-included offense was not a matter of reasonable trial strategy. Torres asserts Counsel's defense strategy at trial was

11

that the braided cord in Torres's possession was not a garrote and therefore not a weapon. Thus, Torres argues that with Instruction 9 for Count III, "the jury did not have an opportunity to find that [Torres] was guilty, not of possessing a weapon, but of unlawfully possessing the cord, an item that was not allowed . . . ." We disagree because the jury did have the opportunity to independently determine whether the item possessed was in fact a weapon. As discussed, the jury heard testimony from Investigator about the garrote, watched surveillance videos of Torres in possession of the item, watched surveillance videos of Torres showing another inmate how the item could be used to choke another person, and viewed the physical item as it was entered into evidence. We find no error in the motion court's determination that Counsel's performance in failing to request a lesser-included offense instruction as to Count III amounted to reasonable trial strategy.

At the evidentiary hearing, Counsel testified he requested lesser-included offense instructions for Counts I and II, but he did not have a strategic reason for failing to request one as to Count III. The motion court found Counsel's testimony as to this matter lacked credibility. This Court will defer to the motion court's credibility determinations, and "the motion court is free to believe all, part, or none of the witnesses' testimony." *Vickers v. State*, 632 S.W.3d 781, 789 (Mo. App. W.D. 2021) (internal quotation omitted). In its findings, the motion court found "it was not advertence on Counsel's part not to submit the lesser-included instruction for Count III, but was a reasonable trial strategy[,]" and it pointed to Counsel's decision in submitting lesser-included instructions for Counts I and II. Torres argues this finding was clearly erroneous because "a

12

reviewing court may not supplant a trial strategy that trial counsel did not provide." However here, as Torres correctly points out in his brief, the motion court did not elaborate as to what Torres's trial strategy might have been. Rather, the motion court merely found Counsel's testimony to lack credibility, and presumed that Counsel's failure to object was reasonable trial strategy. While Torres highlights the motion court's findings as being contrary to the evidence presented at the hearing, we defer to the motion court's finding that Counsel's testimony lacked credibility. Even if Counsel's testimony as to this matter was credible, "[t]he strong presumption that counsel had a strategic reason for his decision is not overcome even when counsel fails to verbalize a trial strategy for his decision." *Wright v. State*, 669 S.W.3d 383, 390 (Mo. App. E.D. 2023) (internal quotation and citation omitted). Torres has failed to overcome the presumption that Counsel's decision was reasonable trial strategy. *See Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009) ("It is presumed that counsel is effective and that the burden is on the movant to show otherwise.").

Torres has also failed to prove he was prejudiced by Counsel's performance. The jury had the opportunity to determine the validity of Torres's argument that the item was not a garrote and concluded the item was a garrote and a weapon, as instructed by Instruction 9. Torres has failed to show that there was a reasonable probability the outcome of trial would have been different if Counsel had submitted a lesser-included instruction. *See Stewart v. State*, 387 S.W.3d 424, 429-30 (Mo. App. S.D. 2012) (holding it was the movant's burden to establish that the jury would have found him not guilty of the charged crime, but would have convicted him of the lesser-included offense).

13

Point IV denied.

**Point V: Investigator's Testimony**

**Analysis**

In Torres's fifth and final point on appeal he argues that the motion court clearly erred in denying his motion for post-conviction relief because Counsel was ineffective in failing to object to Investigator's testimony on the grounds that Investigator's testimony was speculative and conclusory, and thus invaded the province of the jury. Torres points to various portions of Investigator's testimony as it relates to the video footage from inside the jail, which the jury simultaneously viewed during Investigator's testimony. Torres has failed to supply this Court with all of the video footage that was admitted during trial. *See Day v. Hupp*, 528 S.W.3d 400, 412 (Mo. App. E.D. 2017) ("[T]his Court will not consider evidence outside the record on appeal."). Since we do not have several of the videos which Investigator's testimony is based on, we are unable to properly address Torres's arguments that Counsel was ineffective due to his failure to object to those specific portions of Torres's testimony.[6] Therefore, we address only Torres's argument of ineffective assistance of counsel as to Counsel's failure to object to Investigator's testimony pertaining to video 15, which is included in the record on appeal.[7]

---

[6] In Torres's brief, he refers to Investigator's testimony as to videos: 3, 5, 6, 7, 13, 15, and 16. The record on appeal includes only videos: 10-18, and 20.

[7] In his brief, Torres also addresses Investigator's testimony as to videos 13 and 16; however, this is the first time Torres raises issue with these portions of Investigator's testimony because they were not addressed in his amended 29.15 motion. "[O]ur review is limited to the court's ruling on the claims asserted in the 29.15 motion. Any allegations or issues that are not

14

At trial, Investigator testified that he was told Torres was providing information about weapons that were being manufactured in the jail. Investigator began looking into the information Torres provided. Shortly thereafter, the weapons Torres described were recovered and Investigator met with Torres. Torres told Investigator that the weapons were being made in E hall and were transferred in the mop bucket or cleaning cart tools under the bucket to B tank to provide to another inmate to take revenge on a guard. Investigator testified that after this conversation, he began looking at surveillance videos from inside the jail to find the source of the weapons. Counsel objected to Investigator's testimony as to all commentary regarding the videos, including any commentary from unsaved videos on the basis of the best evidence rule and the rule of completeness. The trial court noted that those were two separate objections and sustained the objection as to any testimony from Investigator regarding unsaved video clips.

Investigator testified that he looked at four weeks of video footage from approximately fifteen different cameras. Investigator did not find anything in the footage that corroborated Torres's story, rather, the recorded video contradicted his story. From the footage reviewed, Investigator captured and saved twenty videos. These surveillance videos were admitted into evidence and played for the jury. The videos did not have audio. As Investigator was about to testify about a video, Counsel objected again based on the best evidence rule. The trial court overruled the objection so long as the videos

---

raised in the Rule 29.15 motion are waived on appeal." *Cloyd v. State*, 302 S.W.3d 804, 807 (Mo. App. W.D. 2010) (internal quotation and citation omitted). Therefore, Torres's arguments as to these portions of Investigator's testimony are waived.

15

were played for the jury and Investigator did not testify about the videos before they were shown. When Investigator began to testify while the videos were played, Counsel again objected based on the best evidence rule. The trial court overruled the objection and granted Counsel's subsequent request for a continuing objection on the matter.

While video 15 was played for the jury,[8] Investigator testified:

> In his report, [Sergeant], in what he told us, the other inmates were hiding those knives that were being manufactured at the edge of the shower. The shower is right behind where that door, that gate is folded open, and there is a little gap there between the mesh and between the shower wall and he's using paper *to make sure that his story will hold up by sliding it in to see if the knife will actually fit where he told [Sergeant] it will be hidden.* (emphasis added).

Torres argues Counsel was ineffective in failing to object to Investigator's testimony as it was improperly speculative because Investigator was permitted to testify as to Torres's state of mind at the time of the alleged offenses. To succeed on an ineffective assistance claim based on counsel's failure to object, Torres, "must show that (1) the objection would have been meritorious, and (2) the failure to object resulted in substantial deprivation of his right to a fair trial." *Nigro v. State*, 467 S.W.3d 881, 886 (Mo. App. W.D. 2015). "Ineffective assistance of counsel will rarely be found in cases

---

[8] Video 15 depicted the following on September 23, 2018, at 9:39 p.m.: There is a bunk bed positioned up against a wall. Near the bunk is a mesh gated area that is open. Torres is sitting on the bottom bunk with his legs placed on the floor and his torso reaching towards the end of the bed. A curtain is covering the foot end of his bed and Torres has a blanket draped over his shoulders. The camera's view of Torres's face, hands, and full torso is briefly obstructed by the curtain. Torres sits up, holding a piece of paper in his hands. Torres stands up and walks through the open gate while holding the folded piece of paper. For roughly ten seconds, Torres is not visible. Torres walks back in the camera's view, and attempts to place the paper through a gap between the mesh gate. Torres walks back to his bed and appears to be talking to someone. With the paper in his hand, Torres looks towards another inmate and then back at the mesh gate while talking, and ultimately Torres sits back on his bed.

where trial counsel has failed to object." *Tucker v. State*, 468 S.W.3d 468, 475 (Mo. App. E.D. 2015) (internal citations omitted). "A trial counsel's failure to object is ordinarily trial strategy and therefore afforded considerable deference." *Nigro*, 467 S.W.3d at 886 (internal quotation omitted). Torres has failed to show that the motion court clearly erred in finding that he was not prejudiced by Counsel's failure to object to Investigator's testimony.

In its judgment, the motion court found Counsel "handled the issue in his closing argument by, in effect, arguing the irrelevance of [Investigator's] testimony given the jury's ability to view the video and make their own conclusions." The motion court also noted that the jury was able to view the videos themselves, and that the jury also had the objects depicted in the videos available for their inspection. In light of these factors, the court concluded that there was not a reasonable probability of a different outcome if Counsel had objected to Investigator's testimony. This was not clearly erroneous.

Throughout closing argument, Counsel asked the jury to review the videos for themselves and decide if the videos actually depict what the State was claiming the videos proved. Further, Counsel argued to the jury that Investigator's testimony was speculative and conclusory. Specifically, Counsel argued:

> I find it a little bit interesting that the State doesn't think the jury can review the video and see for themselves what it shows. Somebody has to sit there and tell you what it is. I've never seen anything like that before. I think you are all capable of watching the videos the same way that I did, that, you know, the Judge has, and everybody has in this case, and just seeing what you see in there.
> There is no – [Investigator] doesn't have any type of X-ray vision that he could see things that you don't in there. Just watch it, you know, just watch

17

it for yourself and see what you all see.  We do not need him telling us what is in the videos.

Torres argues Counsel's closing argument came "too little, too late" because "it is likely that the jury had already formed its opinion about the videos which was improperly framed by [Investigator's] speculative testimony."  We disagree.  Before the State's opening statement, the jury was instructed:  "Until this case is given to you to decide, you must not . . . form or express any opinion about [the trial] [.]"  "A jury is presumed to follow the circuit court's instructions."  *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022).  As previously discussed, the jury viewed the video footage and could independently adduce its contents.  If the jury did not believe Investigator's testimony accurately depicted the video, it could have rejected his testimony.  *See Kuehnlein*, 456 S.W.3d at 515.  Torres has failed to show that Counsel's alleged errors of failing to object to portions of Investigator's testimony resulted in a substantial deprivation of his right to fair trial.  *See Nigro*, 467 S.W.3d at 886.

Point V denied.

18

## Conclusion

For the above stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Judge

All concur